Duane HAAS, d/b/a/ Duane Haas Electric, and Olson Sheet Metal Works, Inc., Respondents,

v.

Wilber H. HARRIS, Appellant,

No. C9–83–2005.

Court of Appeals of Minnesota.

May 8, 1984.

Steven H. Berndt, Beugen & Iverson, Ltd., Minneapolis, for respondents.

Julie M. Pawluk, Minneapolis, for appellant.

Considered and decided by SEDGWICK, P.J., PARKER and CRIPPEN, JJ., with oral argument waived.

## OPINION

PARKER, Judge.

Wilber Harris, the president of Camden Bakery, Inc., appeals from a judgment holding him personally liable for a debt he claims was owed by the corporation. Following a court trial, judgment was entered against Harris. The issue before us is whether Harris was properly held to be personally liable under principles of agency. We affirm.

## FACTS

Wilber Harris purchased the Camden Bakery in 1977. In August 1977, Harris received a bid for repair work from respondent Olson Sheet Metal Works. This bid was accepted by Harris shortly after August 18, 1977. A further bid from Olson was also directed to Harris, and was apparently accepted orally. Respondent Duane Haas, d/b/a Duane Haas Electric, submitted a handwritten bid to "Will" which apparently was accepted by silence. On October 19, 1977, Harris incorporated his business as Camden Bakery, Inc. The respondents performed services and provided material at the Camden Bakery. Harris paid for some of the work while it was being done, using checks drawn from Camden's account.

The respondents sued Harris, two other defendants who did not appeal and the Camden Bakery, Inc., to collect the remaining amounts due. The sole issue at trial was whether Harris was personally liable. The trial court ordered judgment for Haas against all defendants jointly and severally in the amount of $3,329 (plus interest) and for Olson against all defendants jointly and severally in the amount of $2,292.50 (plus interest and costs).

## ISSUE

Did the trial court clearly err in holding Harris personally liable for the respondents' claims for payment?

## DISCUSSION

On review, our function is not to weigh the evidence as if trying the matter de novo. Rather, a reviewing court determines from an examination of the record if the evidence as a whole sustains the trial court's findings. *Don Kral, Inc. v. Lindstrom*, 286 Minn. 37, 173 N.W.2d 921 (1970). The trial court's findings "which are the product of firsthand observation of the demeanor of parties and witnesses possess a certain integrity not contained in the written record alone." *Tamarac Inn, Inc. v. City of Long Lake*, 310 N.W.2d 474, 477 (Minn.1981). Thus, we will consider the testimony and evidence in the light most favorable to the prevailing party in determining whether the trial court's findings are clearly erroneous. *Theisens, Inc. v. Red Owl Stores, Inc.*, 309 Minn. 60, 243 N.W.2d 145 (1976); Rule 52.01, Minn.R. Civ.P.

Under traditional principles of agency law, a person making or purporting to make a contract with another as an

agent for a disclosed principal does not become a party to the contract. Restatement (2d) *Agency*, § 320 (1958); *Kost v. Peterson*, 292 Minn. 46, 193 N.W.2d 291 (1971). The principles of agency law "apply equally well where third persons attempt to hold officers or agents personally liable on corporate contracts executed by them." Fletcher, *Cyclopedia of the Law of Private Corporations*, Vol. 3A, § 117 (1975). *See Laff v. Chapman Performance Products, Inc.*, 63 Ill.App.3d 297, 19 Ill.Dec. 901, 379 N.E.2d 773 (1978). Thus, the general rule is that an officer of a corporation is not liable to its creditors for corporate debts. W. Knepper, *Liability of Corporate Offices and Directors*, § 7.01 (3d ed. 1978).

However, when the agent acts for a partially disclosed principal or on his own for an undisclosed principal, the agent is a party to the agreement and is liable on the contract. Restatement (2d) *Agency*, §§ 321, 322 (1958). *See Cargill Elevator Co. v. Sullivan & Co.*, 171 Minn. 507, 214 N.W. 510 (1927). Thus, in the context of corporate law, an officer may subject himself to personal liability to a creditor on a contract which he executes. 19 Am.Jur.2d *Corporations* § 1341 (1965).

Here, our examination of the evidence, giving due credence to the trial court's ability to observe witness' demeanor and their apparent candor, supports the conclusion that Harris never told respondents they were working for a corporation at the time the agreements were made. In fact, the corporation did not even come into formal existence until after some of the bids were made and accepted. Harris' testimony that he advised respondents of the entity known as Camden Bakery, Inc., was equivocal, stating, "I'm sure I did." On the other hand, the respondents unequivocally denied that Harris told them they were working for Camden Bakery, Inc. The documentary evidence is also consistent with the respondents' testimony. It shows the bids were sent to Harris personally and that the respondents treated the transactions as personal with Harris. The fact that the respondents were later paid with Camden Bakery, Inc., checks is of

little persuasive weight on whether Harris disclosed that respondents were working for a corporation when he entered into the agreements; an entity called Camden Bakery existed prior to any of the transactions; the checks were signed by Harris (and others) without any indication of corporate office; the checks were dated either after the work was under way or, in some instances, after completion.

## DECISION

The evidence supports the view that the respondents had no knowledge that Harris was procuring work as an agent of Camden Bakery, Inc. Under accepted principles of agency, he is personally liable for the contracts he executed with the respondents.

Affirmed.