[No. A057164. First Dist., Div. Five. Jan. 28, 1993.]

In re the Marriage of CLEVON and LEOLA LEVINGSTON.
CLEVON LEVINGSTON, Respondent, v.
LEOLA LEVINGSTON, Respondent;
LABORERS PENSION TRUST FUND FOR NORTHERN CALIFORNIA,
Appellant.

COUNSEL

Stanton, Kay & Watson, Thomas E. Stanton, Bruce K. Leigh, Van Bourg, Weinberg, Roger & Rosenfeld and Victor J. Van Bourg for Appellant.

Thomas W. Wolfrum for Respondent Leola Levingston.

No appearance for Respondent Clevon Levingston.

OPINION

KING, J.—In this case we hold that when a retirement plan administrator determines that a marital judgment dividing community interests in the plan is not a qualified domestic relations order (QDRO) as defined by federal law, state and federal courts have concurrent jurisdiction to review that determination.

In 1988, the Laborers Pension Trust Fund for Northern California (Fund) was joined as a party claimant[1] in the marital dissolution proceeding

---

[1]For a discussion of the procedure for joining pension plans in marital dissolution actions for the purpose of dividing community interests therein see our opinion in *In re Marriage of Baker* (1988) 204 Cal.App.3d 206 [251 Cal.Rptr. 126].

between Clevon and Leola Levingston.[2] (Civ. Code, § 4363.1.) In 1989, the Fund began paying pension benefits to Clevon. On March 7, 1991, Leola obtained a domestic relations order specifying the amount of her community property interest in Clevon's pension benefits and ordering the Fund to pay her in the form of a life annuity. In a letter dated June 4, 1991, the Fund notified Leola that the March 7 order was not a QDRO within the meaning of the Employee Retirement Income Security Act (ERISA, 29 U.S.C. § 1001 et seq.)[3] and advised her how to perfect it.[4] On August 9, 1991, Leola filed an order to show cause asking the trial court to enforce its March 7 order. On January 22, 1992, after a hearing, the trial court found the March 7 order was a QDRO, and ordered the Fund to qualify it and pay Leola accordingly.

The Fund appeals, limiting its appeal to the issue of the jurisdiction of a state court to review the plan administrator's determination that the order was not a QDRO. The Fund contends such jurisdiction is limited to federal courts. This appears to be an issue of first impression in the country. Because of the narrow issue before us, we are not called upon to decide, nor do we decide, whether the trial court's determination that its order was a QDRO was correct.

I

■ The Fund contends the trial court did not have jurisdiction to enter the January 22 order after hearing because the fiduciary responsibility for determining whether a given domestic relations order is a QDRO belongs to the pension plan administrator in the first instance (§ 1056(d)(3)(G)) and is reviewable only in federal court (§ 1132(e)(1)). The Fund argues that this issue does not concern the terms of the plan (§ 1132(a)(1)(B)), but rather the provisions of ERISA itself (§ 1132(a)(3)). The Fund views the issue as being whether the plan properly discharged its fiduciary duty (§ 1056(d)(3)(I)) in refusing to qualify the March 7 domestic relations order, which would be within the exclusive jurisdiction of the federal courts. (*Lembo* v. *Texaco, Inc.* (1987) 194 Cal.App.3d 531, 537-538 [239 Cal.Rptr. 596].)

Leola replies that this court, in *In re Marriage of Baker, supra,* 204 Cal.App.3d 206, established that state courts have jurisdiction to issue and

---

[2]For ease of reference, we will refer to the parties by their first names, Clevon and Leola. (See *In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 475-476, fn. 1 [274 Cal.Rptr. 911].)

[3]All further statutory references are to this title unless otherwise indicated.

[4]The letter explained the order "would require the plan to provide the Alternate Payee a type or form of benefit or option which is not available under the Plan, since the Participant had separated from service with respect to the Plan on or before the effective date on which payments to the Alternate Payee under the order are to begin." (See § 1056(d)(3)(D)(i), (d)(3)(E)(i).)

enforce QDRO's. True enough, but that is not the issue here. The issue is whether state courts have jurisdiction to review a plan administrator's determination, under federal law, that a given state court order is or is not a QDRO. That question was not asked or answered in *Baker*.

To assure that the benefits of retirement plans are available for retirement purposes, ERISA precludes alienation of the plan or interests in it. (§ 1056(d)(1).) However, ERISA provides an exception to its anti-alienation provision for a QDRO as defined in section 1056(d)(3)(B)(i). (§ 1056(d)(3)(A).) Subdivision (d)(3)(G) provides that the administrator of a covered pension plan shall determine whether a submitted domestic relations order is qualified. There is no specific provision as to how judicial review of this determination is to be carried out, when the determination is challenged. Pending final determination, the alternate payee's alleged share must be held in a segregated account. (§ 1056(d)(3)(H).)

ERISA specifies that state courts and United States District Courts have concurrent jurisdiction of actions brought under the terms of a plan to recover benefits due, enforce rights, or clarify rights to future benefits. (§ 1132(a)(1)(B).) Otherwise, ERISA provides that federal district courts have exclusive jurisdiction of civil enforcement actions brought by a plan beneficiary. (§ 1132(e)(1).) Thus the determination of the issue before us is dependent upon whether Leola's challenge to the plan administrator's determination that the order was not a QDRO comes within section 1132(a)(1)(B).

As noted earlier, Leola seeks a payout of her community property share of Clevon's retirement benefits in the form of an annuity for her life. The plan seeks to pay her community share based upon the joint and survivor term of Clevon and his current spouse. Leola's motion, filed in the dissolution action, is clearly to recover benefits she claims are due her, to enforce her rights and to clarify her rights to future benefits. Thus, the state court, under ERISA, possessed the jurisdiction to make the order from which the appeal is taken.

As a matter of both public policy and common sense this result is appropriate. There already is a state court action, the marital dissolution action, to which the plan is a party. Thus, a motion in that court is simple, inexpensive and expeditious. We do not believe Congress, having given state courts the power to issue orders determining and dividing marital rights in retirement plans, would require a separate federal court proceeding to decide whether or not the order is a QDRO. This would cause undue hardship, expense and delay to the affected party, and impose an unnecessary workload on already overburdened federal courts. The result we reach carries out

the purpose of Congress in amending ERISA in 1984 by enactment of the Retirement Equity Act to benefit spouses and former spouses, and especially to protect the rights of the nonemployee spouse in the employee's pension benefits. (See *In re Marriage of Baker, supra,* 204 Cal.App.3d at p. 216.)

## II

Leola asks us to sanction the Fund for filing a frivolous appeal (Code Civ. Proc., § 907; Cal. Rules of Court, rule 26(a); *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 [183 Cal.Rptr.508, 646 P.2d 179].) Since this is an issue of first impression, the request is meritless.

Finally, Leola asks that the cause be remanded to the trial court for further hearing on attorney fees on appeal (Civ. Code, §§ 4351, 4363-4363.3, 4370, 4370.6; Code Civ. Proc., § 128.5; 29 U.S.C. § 1132(g); *In re Marriage of Olivarez* (1986) 188 Cal.App.3d 336 [232 Cal.Rptr. 794].) We agree that a remand is appropriate.

The judgment is affirmed. The cause is remanded for determination of Leola's entitlement to attorney fees on appeal.

Peterson, P. J., and Haning, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 13, 1993.