**NORTHLAND TEMPORARIES, INC., Respondent,**

v.

**Anthony TURPIN, et al., Appellants.**

No. A06–2201.

Court of Appeals of Minnesota.

Feb. 5, 2008.

Daniel E. Kelly, Marnie E. Fearon, Felhaber, Larson, Fenlon & Vogt, P.A., Minneapolis, MN, for respondent.

Bradley A. Kletscher, Susan E. Sheely, Barna, Guzy & Steffen, Ltd., Coon Rapids, MN, for appellants.

Considered and decided by DIETZEN, Presiding Judge; LANSING, Judge; and ROSS, Judge.

## OPINION

LANSING, Judge.

The district court denied the motion of two minority shareholders of an inactive corporation to vacate a default judgment, entered against them individually, for money that the corporation owed to a temporary-services agency. Because the district court's determination that the minority shareholders did not have a reasonable defense on the merits relies on an error of law and because the determination that the minority shareholders did not have a reasonable excuse for their failure to submit a timely answer relies on a factual error, we reverse and remand.

## FACTS

The Minnesota Secretary of State's office issued a certificate of incorporation for Manufacturing Out Sourcing Specialists, Inc. on June 22, 1999. Paul Anthony (Paul) Turpin and Tim Turpin are minority shareholders of the corporation; each brother owns twenty-three percent of the corporation's stock. Their father, David Turpin, is the majority shareholder and owns fifty-four percent of the stock. In this action to recover money for temporary services performed for the corporation, Northland Temporaries, Inc., named only Paul and Tim Turpin as defendants.

Although the secretary of state's certificate of incorporation was issued for Manu-

facturing Out Sourcing Specialists Inc., the corporation's promotional materials, checks, and invoices, refers to the corporation as "M.O.S.S., Inc." and sometimes "MOSS, Inc." In some places, Manufacturing Out Sourcing Specialists is spelled out under the abbreviated version of the name, but in other places "MOSS, Inc." or "M.O.S.S., Inc." stands alone. The record indicates that the shareholders of M.O.S.S., Inc. always used the corporate designation "Inc." in referring to the corporation's name and that M.O.S.S., Inc.'s promotional materials, checks, and invoices—including a framed handout that hung inside M.O.S.S., Inc.'s office—identified M.O.S.S. as a corporation.

In the summer of 2000 or 2001, a salesman from Northland visited the office of M.O.S.S., Inc., made an oral presentation, and offered M.O.S.S., Inc. the opportunity to hire temporary employees through Northland. The Northland salesman initiated the contact. During his visit, the salesman did not present anyone at M.O.S.S., Inc. with a written contract or discuss the terms of M.O.S.S., Inc.'s potential relationship with Northland other than rates. The record does not contain a written agreement for services other than the conditions that are listed on the reverse side of the employee's time sheets. But the evidence establishes that M.O.S.S., Inc. regularly hired temporary employees from Northland, beginning shortly after the salesman's presentation and continuing until November 2005. The invoices that Northland mailed to M.O.S.S., Inc. are addressed to "M.O.S.S." at the corporation's address. The timesheets that Northland used to generate its invoices identify the client as "Moss, Inc." or as "Moss."

M.O.S.S., Inc. ceased its operations in January 2006. At that time, M.O.S.S., Inc. owed Northland $12,901.31 for services provided by Northland's employees. In an affidavit, Tim Turpin states that after M.O.S.S., Inc. ceased its operations he received a call from Northland's general manager asking about payments on the outstanding bill. The affidavit states that he told the general manager that M.O.S.S., Inc. was out of business and that the Turpins no longer worked for M.O.S.S., Inc. In a counteraffidavit, Northland's general manager states that his only telephone conversation with Tim Turpin between June 2005 and June 2006 was Turpin's telephone call after service of the summons and complaint and was confined to Turpin's question of whether Northland had a contract for services with the Turpins.

In preparing to file suit against M.O.S.S., Inc., counsel for Northland checked with the secretary of state's office and was unable to find a Minnesota corporation registered under the name "M.O.S.S., Inc." Northland therefore filed a complaint against "Anthony Turpin and Tim Turpin, d/b/a M.O.S.S." Northland did not include M.O.S.S., Inc. as a defendant.

Tim Turpin's affidavit states that after receiving the summons and complaint, he again called Northland's general manager. He states that he told the general manager that M.O.S.S., Inc. was a subchapter S corporation and that he and his brother were therefore not personally liable for the corporation's debt. The counteraffidavit of Northland's general manager states that this was the conversation that was limited to Turpin's question about whether they had a written contract.

Neither Paul nor Tim Turpin submitted an answer to Northland's complaint. On January 24, 2006, the Turpins registered a corporation entitled "MOSS, Inc." with the secretary of state.

The district court entered a default judgment against Paul and Tim Turpin, jointly and severally, in the amount of

$13,974.31 on April 7, 2007. The Turpins filed a motion to vacate the default judgment on June 2, 2006. The court denied the motion, and this appeal follows.

## ISSUES

I. Do the law and the facts support the determination that the minority shareholders have no reasonable defense on the merits of the action?

II. Do the facts support the determination that the minority shareholders have no reasonable excuse for their failure to submit an answer?

III. What is the remedy if the district court relies on an error of law or fact when applying the factors in *Hinz v. Northland Milk & Ice Cream Co.*, 237 Minn. 28, 53 N.W.2d 454 (1952)?

## ANALYSIS

■ A district court may vacate a final judgment for reasons of "[m]istake, inadvertence, surprise, or excusable neglect." Minn. R. Civ. P. 60.02(a). Minnesota courts analyze motions seeking relief from orders and judgments under Minn. R. Civ. P. 60.02 by applying a four-factor test that was established in *Hinz v. Northland Milk & Ice Cream Co.*, 237 Minn. 28, 30, 53 N.W.2d 454, 456 (1952). The *Hinz* factors require consideration of whether the movant has (1) a reasonable defense on the merits; (2) a reasonable excuse for the failure or neglect to answer; (3) acted diligently after notice of entry of the judgment; and (4) demonstrated that no prejudice will occur to the judgment creditor. *Id.*

■ The district court has broad discretion in deciding whether to grant or deny a rule 60.02 motion. *Kosloski v. Jones*, 295 Minn. 177, 180, 203 N.W.2d 401, 403 (1973). But broad discretion does not mean that the discretion is unlimited. *Spicer v. Carefree Vacations, Inc.*, 370 N.W.2d 424, 426 (Minn.1985). Significantly, the *Hinz* decision itself limits the district court's discretion by specifically holding that "[i]n the exercise of sound judicial discretion . . . it is the duty of the trial court . . . to grant a motion to open a default judgment and permit a party to answer" if the party in default shows that it has met each of the requirements in the four-factor test. *Hinz*, 237 Minn. at 30, 53 N.W.2d at 455–56. The supreme court reaffirmed that requirement in *Finden v. Klaas*, 268 Minn. 268, 271–73, 128 N.W.2d 748, 750–51 (1964) (reversing denial of motion to vacate because defendant met three factors and, on fourth—absence of reasonable excuse—attorney's neglect was not attributable to defendant).

The supreme court has also limited the district court's discretion in deciding motions under rule 60.02 by requiring that the moving party must demonstrate a reasonable defense on the merits before the district court may grant a motion to open a default judgment. *See Vrooman Floor Covering Inc. v. Dorsey*, 267 Minn. 318, 322, 126 N.W.2d 377, 380 (1964) (reversing an order to reopen judgment when movant failed to show reasonable defense on merits); *see also Hengel v. Hyatt*, 312 Minn. 317, 319, 252 N.W.2d 105, 106 (1977) ("If no affidavit of merit or other proof of a valid defense is provided, the motion to vacate will be denied.").

■ Finally, the supreme court has held that, "if the trial court has acted under a misapprehension of the law," the decision will be reversed on appeal even though the opening of a default judgment "lies almost wholly within the sound discretion of the trial court." *Sommers v. Thomas*, 251 Minn. 461, 469, 88 N.W.2d 191, 196–97 (1958). Similarly, when the district court's reasons are based on facts not supported

by the record, the determination will not be sustained. *See Roehrdanz v. Brill,* 682 N.W.2d 626, 631–32 (Minn.2004) (evaluating district court's discretionary ruling on motion to vacate default judgment); *Duenow v. Lindeman,* 223 Minn. 505, 518, 27 N.W.2d 421, 429 (1947) (reversing order denying motion to vacate because "plain and decisive facts were entirely overlooked by the trial judge").

In the original complaint, Northland alleged that Paul and Tim Turpin, doing business as M.O.S.S., breached their contract to pay for Northland's temporary services and, because Northland had provided M.O.S.S. with invoices, Paul and Tim Turpin were liable under an account-stated theory. At the hearing on the motion to vacate, Northland argued that the Turpin brothers were liable because they did not "file for a certificate of assumed name."

In denying the Turpins' motion to vacate, the district court applied the four *Hinz* factors and concluded that the Turpins had demonstrated two of the four factors. The record supports the district court's decision on these factors. First, the district court concluded that they had acted "with due diligence after receiving notice of entry of judgment against them." Second, the district court concluded that the Turpins had demonstrated that "a vacation of the default judgment results in no substantial prejudice to Northland." On the remaining two *Hinz* factors, the district court concluded that the Turpins had not demonstrated that they had a reasonable excuse for failure to answer and that they had not shown that they had a reasonable defense on the merits. We therefore turn to the district court's analysis on each of these two factors.

**I**

 A reasonable defense on the merits is one that, if established, provides

a defense to the plaintiff's claim. *Finden,* 268 Minn. at 271, 128 N.W.2d at 750. Specific information that clearly demonstrates the existence of a debatably meritorious defense satisfies this factor. *Charson v. Temple Israel,* 419 N.W.2d 488, 492 (Minn. 1988).

The Turpins' defense is based on the general rule that the employees and shareholders of a corporation are not personally liable for the corporation's debts. *See* Minn.Stat. § 302A.425 (2006) (limiting shareholder liability). Northland advances two theories under which this general rule does not apply. We conclude, however, that the Turpins still have a reasonable defense under either of Northland's theories.

 Northland's first theory is that the Turpin brothers are liable for the debts of the corporation because they were agents acting for an undisclosed or partially disclosed principal. The district court accepted this argument and determined that the Turpins had acted on behalf of M.O.S.S., Inc., a partially disclosed principal. For two reasons, we conclude that the Turpins have a reasonable defense on the merits against this first theory.

First, the evidence in the record does not show that the Turpins personally contracted with Northland on behalf of M.O.S.S., Inc. *Cf. Haas v. Harris,* 347 N.W.2d 838, 840 (Minn.App.1984) (stating person is liable on contract he executes on behalf of partially disclosed principal). The record suggests that the salesman reached an agreement with someone at M.O.S.S., Inc. before sending temporary employees, but nothing in the record indicates that Paul or Tim Turpin personally contracted with Northland or were personally involved in reaching an agreement with Northland.

Second, the facts in the record weigh against Northland's claim that M.O.S.S., Inc. was an undisclosed or a partially disclosed principal. An agent acts on behalf of a disclosed principal "if, when an agent and a third party interact, the third party has notice that the agent is acting for a principal and has notice of the principal's identity." Restatement (Third) of Agency § 1.04(2) (2006). Northland does not dispute that it knew that Paul and Tim Turpin acted on behalf of an entity identified as M.O.S.S., Inc. And Northland does not claim that knowing M.O.S.S., Inc.'s full name was necessary to assess its creditworthiness or its ability to perform duties under the contract. *See* Restatement (Third) of Agency § 6.02 cmt. b (2006) (stating that when principal is disclosed, third party can assess principal's reputation, assets, and other indicia of creditworthiness as well as its ability to perform duties under contract).

To the contrary, the record indicates that Northland had notice of M.O.S.S., Inc.'s corporate identity. Northland's salesman sought out M.O.S.S., Inc. as an entity with which it was interested in doing business. In addition to knowing that M.O.S.S., Inc. was incorporated, Northland knew the location of M.O.S.S., Inc. and the names of M.O.S.S., Inc.'s owners. Furthermore it is reasonable to assume that, after visiting with people at M.O.S.S., Inc., Northland's salesman had notice of M.O.S.S., Inc.'s basic purpose and structure. Because the record demonstrates that Northland had notice of facts reasonably sufficient to assess M.O.S.S., Inc.'s creditworthiness and ability to perform duties under the contract, Northland has not conclusively shown that M.O.S.S., Inc. was an undisclosed or only partially disclosed principal. *Cf. Haas,* 347 N.W.2d at 840 (holding that agent acted on behalf of partially disclosed principal because third

party did not have notice that principal was incorporated).

Northland's second theory is that the Turpins do not have a reasonable defense on the merits because they failed to file a "certificate of assumed name." Under this second theory, Northland claims that the Turpins are personally liable because they violated Minn.Stat. § 333.01 (2006), which prohibits a person from conducting business under an assumed name "unless such person shall file in the Office of the Secretary of State, a certificate setting forth the name and business address under which the business is conducted or transacted." Under Minn.Stat. § 333.065 (2006), a person who violates Minn.Stat. § 333.01 is subject to penalties and remedies provided in Minn.Stat. § 8.31 (2006) as well as remedies or penalties otherwise available. And according to Minn.Stat. § 8.31, subd. 3(a), any person who is injured by a violation of Minn.Stat. § 333.01 "may bring a civil action and recover damages, together with costs and disbursements ... and receive other equitable relief as determined by the court."

The Turpins, however, have a reasonable defense on the merits against this "assumed-name" theory. Northland has offered no support for its claim that an acronym is an assumed name under Minn. Stat. § 333.01, and we find no basis for concluding as a matter of law that, unless a corporation wishes to expose its shareholders to personal liability for corporate debt under Minn.Stat. § 333.01, it cannot refer to itself by an acronym reasonably drawn from its name. Furthermore, Northland has not alleged that the Turpins caused injury to Northland by using an acronym. If Northland is able to recover from M.O.S.S., Inc. it will suffer no injury, and, even if it is unable to recover from M.O.S.S., Inc., the Turpins' use of the ac-

ronym has not been linked to Northland's inability to recover for breach.

Because the Turpins have a reasonable defense on the merits against each of Northland's theories, we return to the fundamental principle that, in the absence of an agreement to guarantee corporate debt, shareholders and employees are not liable to creditors for debts incurred by the corporation. Minn.Stat. § 302A.425. Because Northland has not conclusively shown that this principle does not apply, the district court misapprehended the law when it determined that the Turpins did not meet the requirements of the first *Hinz* factor.

## II

■ The district court also based its decision to deny the Turpins' motion on the second *Hinz* factor, determining that the Turpins do not have a reasonable excuse for their failure or neglect to answer the complaint. The Turpins, by affidavit, assert that they did not answer because the complaint alleged that M.O.S.S. had breached its contract by failing to pay Northland and that they were not personally liable for M.O.S.S., Inc.'s debts. They believed that Tim Turpin's telephone call to the general manager telling him that they were incorporated would resolve the matter because Northland was also a corporation and would understand that the Turpins were not personally liable. *See Guillaume & Assocs., Inc. v. Don–John Co.*, 371 N.W.2d 15, 19 (Minn.App.1985) (recognizing that lay person's failure to answer in some circumstances may not be unreasonable).

The district court concluded that the Turpins' failure to answer was inexcusable because they intentionally disregarded not only the summons and complaint, but also ignored the district court's order for disclosure, which made it clear that some type of paper must be filed with the court.

In reaching this conclusion, the district court relied on the reasoning of *Black v. Rimmer*, 700 N.W.2d 521 (Minn.App.2005). In *Black*, the court issued an order requiring an informational statement in July 2003 and entered a default judgment one year later, in July 2004. *Id.* at 527–28. The court reasoned that although a non-lawyer might not understand the language in a summons, the order for an informational statement makes it clear to anyone that some type of paper must be filed with the court and the failure to respond to that requirement was unreasonable. *Id.* at 527. In drawing a parallel to *Black*, the district court apparently overlooked the fact that the court's order to the Turpins to provide financial disclosure was not issued until May 16, 2006, more than a month after it entered the default judgment against the Turpins. Consequently, unlike the circumstances of *Black*, the court's order for disclosure did not give the Turpins additional *timely* notice that they needed to file papers with the court.

The only other notice evidenced in the record was Northland's notice of request for a hearing to determine attorneys' fees. This notice was not served on the Turpins personally but was served by mail to M.O.S.S., Inc.'s business address on February 1, 2006. M.O.S.S., Inc. ceased its operations in January 2006. The evidence in the record does not indicate whether the Turpins received the notice or that any failure to respond was intentional. Because the district court's decision on the second *Hinz* factor was significantly based on facts not supported by the record, the district court's decision cannot be sustained.

## III

■ When appellate courts reverse the district court's exercise of discretion under rule 60.02, we typically conclude

that further proceedings are unnecessary. *See Charson,* 419 N.W.2d at 492 (remanding only for vacation of judgment and dismissal); *Hinz,* 237 Minn. at 32, 53 N.W.2d at 457 (reversing); *Guillaume,* 371 N.W.2d at 19 (ordering default judgment vacated). In this case, however, the district court's decision was based in part on a factual error. For two reasons we conclude that it is, therefore, appropriate to remand for a reevaluation of the *Hinz* factors. First, it is within the province of the district court to resolve factual disputes in testimony and affidavits. *Roehrdanz,* 682 N.W.2d at 630, 631–32; *Roe v. Widme,* 191 Minn. 251, 252–53, 254 N.W. 274, 275 (1934). And, second, it is generally for the district court to determine whether a litigant's excuse for not having answered in time is a reasonable excuse. *Standard Oil Co. v. King,* 238 Minn. 81, 83, 55 N.W.2d 710, 712 (1952).

We note that the district court, relying again on *Black,* stated that "[t]o obtain relief under rule 60.02, all four of the [*Hinz*] factors must be present." Although this is an accurate statement of the standard of review in *Black,* an element of caution is necessary in its application. As a basis for this holding, *Black* cites *Charson,* 419 N.W.2d at 491. *Charson,* in reviewing the district court's denial of a motion to vacate a dismissal, applied a rule 60.02 analysis. 419 N.W.2d at 490–92. The supreme court concluded that Charson had satisfied three of the *Hinz* factors and then stated that "before relief will be granted from a final order or judgment, the moving party must also establish to the satisfaction of the court that it possesses a meritorious claim." *Id.* at 491. As authority for this point, the *Charson* court relied on *Hengel,* 312 Minn. at 319, 252 N.W.2d at 106. Other appellate decisions have similarly cited *Charson* for this review standard. *See, e.g., Nguyen v. State Farm Mut. Auto. Ins. Co.,* 558 N.W.2d 487, 490 (Minn.1997) (citing *Charson* for conclusion that "[a]ll four of the [*Hinz*] factors must be satisfied in order to justify relief under [rule 60.02]").

*Charson,* however, does not say that *all* four factors must be met to allow a district court to exercise its discretion and grant relief under rule 60.02. Read carefully, it only states that a litigant seeking relief under rule 60.02 must show a meritorious claim or a reasonable defense on the merits. *Charson,* 419 N.W.2d at 491. This reading is confirmed by the authority it cites—*Hengel,* which states that a motion to vacate will be denied if the movant fails to show a meritorious defense. *Hengel,* 312 Minn. at 319, 252 N.W.2d at 106. *Hengel,* in turn, refers to *Vrooman,* 267 Minn. at 322, 126 N.W.2d at 380, which also states that a motion to vacate will be denied if the movant has not demonstrated a reasonable defense on the merits. *Hengel,* 312 Minn. at 319, 252 N.W.2d at 106.

■ It is important to note that *Hinz* and *Finden* do not limit the district court's discretion to grant relief under rule 60.02; they limit the district court's discretion to deny relief. *Hinz,* 237 Minn. at 30, 53 N.W.2d at 455–56; *Finden,* 268 Minn. at 271, 128 N.W.2d at 750. Satisfaction of all four *Hinz* factors requires that relief from judgment must be granted. *Id.* Consequently, these factors provide a relevant framework for the district court in the exercise of its affirmative discretionary power. But we find no solid authority for saying that the district court may only grant relief under rule 60.02 when *all* four factors have been fully met.

On this record, the facts and the law establish that the Turpins have a reasonable defense based on the general rule that the employees and shareholders of a corporation are not personally liable for the corporation's debts. On the remaining fac-

tor—the reasonableness of the Turpins' excuse for failing to respond—we remand to the district court for further consideration. The district court may exercise its discretion to determine whether the motion for relief should be granted, but it is not precluded from granting relief even if it determines that the Turpins' excuse was not reasonable. We also reverse and remand to the district court the determination on attorneys' fees, recognizing that it is within the district court's discretion to condition relief from judgment on the payment of costs associated with the default proceedings. *Finden,* 268 Minn. at 272, 128 N.W.2d at 751.

## DECISION

Because the district court's determinations that the Turpins failed to show that they have a reasonable defense on the merits and failed to establish that they have a reasonable excuse were significantly affected by mistakes of law and fact, we reverse and remand for reconsideration of the factors set out in *Hinz v. Northland Milk & Ice Cream Co.,* 237 Minn. 28, 53 N.W.2d 454 (1952).

**Reversed and remanded.**