Patricia Ann LANGSTON, Respondent,

v.

WILSON McSHANE CORPORATION, as Administrator for the Twin Cities Carpenters and Joiners Pension Fund, et al., Appellants.

No. A07–2034.

Court of Appeals of Minnesota.

Dec. 9, 2008.

---

Thomas F. DeVincke, Bonner & Borhart LLP, Minneapolis, MN, for respondent.

Carl S. Wosmek, Amy L. Court, McGrann Shea Anderson Carnival Straughn & Lamb, Chartered, Minneapolis, MN, for appellants.

Considered and decided by HUDSON, Presiding Judge; TOUSSAINT, Chief Judge; and KALITOWSKI, Judge.

## OPINION

TOUSSAINT, Chief Judge.

On appeal from the district court's order entering default judgment against them and order denying their motion to vacate the default judgment, appellants Wilson McShane Corporation, as Administrator for the Twin Cities Carpenters and Joiners Pension Fund, and the Twin Cities Carpenters and Joiners Pension Fund argue (1) the district court, as a state court, did not have subject-matter jurisdiction to decide whether a domestic relations order (DRO) is a "qualified" domestic relations order (QDRO) for the purposes of the Employee Retirement Income Security Act (ERISA); (2) the district court abused its discretion in denying appellants' motion to vacate the default judgment; and (3) vacation of the default judgment is appropriate because the district court issued two conflicting orders and both require appellants to violate ERISA. Because the district court did not have subject-matter jurisdiction to decide whether the DRO is a

QDRO for the purposes of ERISA, we reverse.

## FACTS

Respondent Patricia Ann Langston married Gary Langston (husband) in September. Their marriage was later dissolved pursuant to a judgment entered by the Anoka County District Court in 1993. The judgment awarded respondent a one-half interest in the marital share of future pension payments to be received by husband from Twin Cities Carpenters and Joiners Pension Fund, a multi-employer, defined-benefit plan established and administered by Wilson McShane in accordance with the provisions of ERISA. The judgment also ordered husband to name respondent as his surviving beneficiary in the event that appellants allowed him to elect survivor benefits.

Respondent's attorney at the time of the dissolution was apparently responsible for drafting a proposed DRO for the district court's review, which was to be deemed "qualified" by appellants. This was a crucial step in establishing respondent's right to receive pension payments because benefits provided under an ERISA plan "may not be assigned or alienated" by a DRO unless it "is determined to be a" QDRO. 29 U.S.C. § 1056(d)(1), (3)(A) (2006). For reasons not explained in the record, respondent's attorney did not submit a DRO to the court or notify appellants that husband's marital status had changed as a result of the marital dissolution and that respondent had a future interest in his pension benefits.

In July 2001, husband remarried. In 2004, husband retired and applied for pension benefits, electing to receive a 50% joint and survivor annuity form of benefit and naming his second wife, Shelly James, as his surviving annuitant. Appellants approved husband's application, determining that his normal retirement benefit would be $2,825.63 per month for the remainder of his life, and that James, as his named survivor, would receive $1,412.81 per month upon husband's death. As of this time, appellants were still without notice of respondent's interest in the marital share of husband's pension benefits under the terms of the dissolution judgment. Husband's pension benefits commenced on July 1, 2004.

On July 1, 2005, respondent obtained a DRO from the district court. The order identified respondent as the alternate payee of husband's benefits and assigned her "50% of the retirement benefits otherwise payable to [husband] in accordance with the terms of the Plan derived from his accrued vested benefit accumulated from September 5, 1964 through August 3, 1993." The order further provided that funds payable to respondent would be distributed "in the form of an annuity payable over her lifetime with monthly payments commencing when [husband] reaches or would have reached his earliest retirement age under the Plan." The order required that respondent "shall deliver a signed and certified copy of [the DRO] to the Plan Administrator," for the purpose of determining whether the proposed DRO is a QDRO under ERISA.

Respondent provided a copy of the DRO to appellants on August 10, 2005. Appellants subsequently concluded that the proposed DRO could not be "qualified" for two reasons: (1) the DRO required payments be made to respondent in the form of an annuity payable over her lifetime, but pursuant to terms of the plan, benefits could only be payable over husband's lifetime; and (2) the DRO provided that, in the event husband predeceased respondent prior to the commencement of benefit payments, respondent was to be considered the surviving spouse entitled to benefits,

which was not possible since husband had named James as his beneficiary and husband's survivor benefits vested in James on the date of husband's retirement.

Appellants notified respondent of their determination by letter dated August 18, 2005, informing her that she could submit a revised DRO to correct the defects. In the event that respondent submitted a revised DRO that appellants could deem "qualified," appellants determined that respondent would be entitled to $381.38 per month from husband's monthly pension benefit.

On October 19, 2005, husband died. Appellants commenced payment of the survivor annuity to James in November 2005, and therefore respondent was no longer entitled to any portion of the pension payments to husband. Respondent never submitted a revised DRO to appellants; it appears that, even if she had, respondent would have been entitled to a total of only $762.76 in pension-benefit payments.

After husband's death, respondent brought a motion in the marital-dissolution action to show cause or enforce the DRO against appellants. A hearing was held on July 25, 2006. The district court denied respondent's motion, finding that it lacked jurisdiction over appellants because they were "not parties to [the] post-decree marriage dissolution proceeding." Respondent's request for reconsideration of this ruling was denied.

Respondent then filed a complaint for declaratory relief in Anoka court seeking a declaration that the DRO was "qualified" under ERISA. The summons and complaint were served on Wilson McShane,

appellants' agent for service of process, on January 5, 2007. Wilson McShane faxed a copy to appellants' counsel, who mistakenly thought that the documents related to the family-court matter, to which appellants were not parties, so appellants' counsel did not timely answer the complaint.

On March 2, 2007, respondent moved for default judgment. Appellants did not receive notice of the motion and did not appear at the default hearing on April 18, 2007. The district court granted respondent's motion for default judgment. The default order: (1) declared the DRO "qualified" under ERISA; (2) provided that any contrary interpretation by appellants was null and void; (3) required appellants to calculate monthly benefit payments as set forth in the DRO and to remit past payments to respondent from August 10, 2005; (4) required appellants to remit future payments to respondent in accordance with the DRO and judgment and decree; and (5) awarded respondent attorney fees of $1,440.00 and costs of $556.00.

In April 2007, appellants received notice of the entry of judgment and shortly thereafter moved to vacate the default judgment. In June 2007, the district court held a hearing on appellants' motion to vacate and denied the motion in August 2007.[1]

## ISSUES

1. Did the district court have concurrent subject-matter jurisdiction to determine whether respondent's proposed DRO was "qualified" for ERISA purposes?

---

1. Respondent also filed a motion in this court to strike the benefit-plan documents from the addendum to appellants' brief on the ground that these documents are not part of the record on appeal. This court addressed that motion in an order dated August 28, 2008, concluding that, although the plan documents themselves are not part of the record on appeal, the material portions of the plan documents are cited in other documents that are part of the record.

2. Did the district court abuse its discretion in applying the *Hinz* factors and denying appellants' motion to vacate the default judgment?

3. Should appellants be granted relief under the residual clause in Minn. R. Civ. P. 60.02(f)?

## ANALYSIS

In reviewing the denial of a motion to vacate a default judgment, we determine whether the district court abused its discretion. *Foerster v. Folland,* 498 N.W.2d 459, 460 (Minn.1993). If the district court "has acted under a misapprehension of the law," the decision will be reversed on appeal even though the opening of a default judgment "lies almost wholly within the sound discretion of the trial court." *Sommers v. Thomas,* 251 Minn. 461, 469, 88 N.W.2d 191, 196–97 (1958). Similarly, when the district court's findings are based on facts not supported by the record, the determination will not be sustained. *See Duenow v. Lindeman,* 223 Minn. 505, 518, 27 N.W.2d 421, 429 (1947) (reversing order denying motion to vacate judgment because "plain and decisive facts were entirely overlooked by the trial judge").

## I.

Appellants argue that the district court should have set aside the default judgment in this matter because it is void for lack of subject-matter jurisdiction. Whether subject-matter jurisdiction exists is a question of law, which we review de novo. *Real Estate Equity Strategies, LLC v. Jones,* 720 N.W.2d 352, 355 (Minn.App. 2006).

Under ERISA, a state court has subject-matter jurisdiction to consider a "civil action ... brought ... by a participant or beneficiary ... to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his right to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B) (2006). Otherwise, ERISA grants exclusive federal subject-matter jurisdiction over all other civil actions brought under it by a participant or beneficiary. *See id.* § 1132(e)(1) (2006) ("Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought ... by a participant, beneficiary, fiduciary.... State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraphs (1)(B) and (7) of subsection (a) of this section.").

In interpreting the concurrent-jurisdiction clause, federal courts have clarified that exclusive federal jurisdiction exists only when there is a challenge concerning the validity of a pension plan, or when construction of ERISA is sought:

> Section 1132(a)(1)(B) is obviously designed to cover that situation in which a defendant refuses to pay benefits due under the terms of a plan, or where for certain reasons, a plaintiff seeks to clarify his rights to future benefits without actually challenging the validity of a portion of the plan or seeking a construction of the ERISA statute.

*Guthrie v. Dow Chem. Co.,* 445 F.Supp. 311, 314–15 (S.D.Tex.1978).

Appellants argue that the district court erred by summarily concluding that respondent's claim falls under section 1132(a)(1)(B), giving the court concurrent subject-matter jurisdiction. Appellants assert that respondent's claim cannot fall under section 1132(a)(1)(B) because it fails to allege a violation of a term of the plan, and instead seeks only a determination that the DRO—"which is completely sepa-

rate from the terms of the SPD and Plan document"—is "qualified."

■ Whether a DRO is "qualified" for ERISA purposes involves construction of applicable provisions of the ERISA statute. *See Hogan v. Raytheon, Co.,* 302 F.3d 854, 856 (8th Cir.2002) (stating that whether decree constitutes QDRO does not involve interpretation of plan's terms); *see also Rouse v. DaimlerChrysler Corp.,* 300 F.3d 711, 716 (6th Cir.2002) ("The question before the district court was whether the DRO satisfied § 1056 of ERISA. That question is strictly federal."). Under ERISA, a DRO is defined as "any judgment, decree, or order ... which (I) relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant, and (II) is made pursuant to a State domestic relations law...." 29 U.S.C. § 1056(d)(3)(B)(ii) (2006). Although rights awarded under a DRO arise out of state family-law marital-dissolution actions, a DRO must comply with the terms of the plan documents for a particular pension fund. A DRO may then be deemed "qualified" if, among other things, it "assigns to an alternate payee the right to ... receive all or a portion of the benefits payable with respect to a participant under a plan"; "does not require a plan to provide any type or form of benefit, or any option, not otherwise provided under the plan"; "does not require the plan to provide increased benefits (determined on the basis of actuarial value)"; and "does not require the payment of benefits to an alternate payee which are required to be paid to another alternate payee under another order previously determined to be a qualified domestic relations order." *Id.,* § 1056(d)(3)(B)(i)(I), (d)(3)(D)(i)-(iii) (2006).

Here, noting that it could find no reported Minnesota or Eighth Circuit cases on point, the district court turned to decisions from other jurisdictions addressing "the specific question of whether a state court has jurisdiction to determine that a domestic relations order is 'qualified' under ERISA." *See Bd. of Trs. of Laborers Pension Trust Fund for N. Cal. v. Levingtson,* 816 F.Supp. 1496, 1500 (N.D.Cal.1993) (holding that Congress intended state courts to resolve whether DRO is "qualified"); *In re Marriage of Levingston,* 12 Cal.App.4th 1303, 16 Cal.Rptr.2d 100, 101 (1993) ("In this case we hold that when a retirement plan administrator determines that a marital judgment dividing community interests in the plan is not a [QDRO] as defined by federal law, state and federal courts have concurrent jurisdiction to review that determination."); *Jones v. American Airlines, Inc.,* 57 F.Supp.2d 1224, 1230 (D.Wyo.1999) (citing *In re Marriage of Oddino,* 16 Cal.4th 67, 65 Cal.Rptr.2d 566, 939 P.2d 1266, 1274 (1997) for its holding that concurrent subject-matter jurisdiction existed over issue of whether state court's order assigning retirement benefits to non-employee spouse constituted QDRO under ERISA).[2] The district court concluded that the default-judgment order is not void because federal courts do not have exclusive jurisdiction over the issue of whether respondent's proposed QDRO is "qualified" for ERISA purposes.

---

2. We note that other federal courts have also taken this approach. *See Geiger v. Foley Hoag LLP Ret. Plan,* 521 F.3d 60, 66–68 (1st Cir. 2008) (rejecting argument that "unambiguous language" of ERISA supports conclusion that state courts do not have jurisdiction to determine whether DROs are "qualified"); *Scales v. General Motors Corp.,* 275 F.Supp.2d 871, 876–77 (E.D.Mich.2003) ("[S]tate courts have concurrent jurisdiction regarding the interpretation of QDROs ... and are fully competent to adjudicate whether their own orders are QDROs.") (citation omitted).

But the cases cited by the district court require a broad interpretation of ERISA's jurisdictional provisions that contradicts the plain language of the statute as well as regulatory interpretation of its provisions. The United States Department of Labor, which has jurisdiction to interpret the QDRO provisions set forth in section 206(d)(3) of ERISA, has issued a publication stating that "a state court ... does not have jurisdiction to determine whether an issued domestic relations order constitutes a 'qualified domestic relations order' ... jurisdiction to challenge a plan administrator's decision about the qualified status of an order lies exclusively in Federal court." Op. U.S. Dep't of Labor, *The Division of Pensions Through Qualified Domestic Relations Orders,* § 1–12 (2001).

■ Here, respondent's complaint sought a declaratory judgment stating that the district court's DRO was "qualified" and requiring appellants to pay benefits in accordance with that judgment. Such relief requires construction of the ERISA statute which is exclusively a federal question. *See Rouse,* 300 F.3d at 716 (stating that question of whether DRO satisfies section 1056 of ERISA is "strictly federal"). We thus conclude that the plain language of ERISA and the Department of Labor's interpretation of its provisions require a narrower approach than that taken in other jurisdictions. Federal courts have exclusive jurisdiction to determine whether a DRO is "qualified" under ERISA.

Although we conclude that the district court's order denying appellants' motion to vacate the default judgment should be reversed for lack of subject-matter jurisdiction, we nonetheless address appellants' additional arguments in the interests of judicial economy.

## II.

■ A district court may vacate an order or final judgment for reasons of "[m]is-take, inadvertence, surprise, or excusable neglect." Minn. R. Civ. P. 60.02(a). Minnesota courts analyze motions seeking relief under Minn. R. Civ. P. 60.02 by applying a four-factor test established in *Hinz v. Northland Milk & Ice Cream Co.,* 237 Minn. 28, 53 N.W.2d 454 (1952). The *Hinz* factors require consideration of whether the movant has: (1) a reasonable defense on the merits; (2) a reasonable excuse for the failure or neglect to answer; (3) acted diligently after notice of entry of the judgment; and (4) demonstrated that no prejudice will occur to the judgment creditor. *Id.* at 30, 53 N.W.2d at 456; *see also Northland Temporaries, Inc. v. Turpin,* 744 N.W.2d 398, 402 (Minn.App.2008) (reaffirming *Hinz* test).

The *Hinz* decision limits the district court's discretion by specifically holding that "[i]n the exercise of sound judicial discretion ... it is the duty of the trial court ... to grant a motion to open a default judgment and permit a party to answer" if the party in default shows that it has met each of the requirements in the four-factor test. *Hinz,* 237 Minn. at 30, 53 N.W.2d at 455–56. The Minnesota Supreme Court has limited the district court's discretion in deciding motions under rule 60.02 by requiring that the moving party demonstrate a reasonable defense on the merits before the district court may grant a motion to open a default judgment. *See Vrooman Floor Covering Inc. v. Dorsey,* 267 Minn. 318, 322, 126 N.W.2d 377, 380 (1964) (reversing order to reopen judgment when movant failed to show reasonable defense on merits); *Hengel v. Hyatt,* 312 Minn. 317, 319, 252 N.W.2d 105, 106 (1977) ("If no affidavit of merit or other proof of a valid defense is provided, the motion to vacate will be denied.").

Here, following its application of the *Hinz* factors, the district court concluded that appellants

made (1) no showing that they have a reasonable defense on the merits; (2) a very weak showing that they have a reasonable excuse for their failure to timely answer the Complaint; (3) a very strong showing they acted with due diligence after entry of the default judgment; and (4) a poor showing that [respondent] would not suffer substantial prejudice by vacation of the default judgment.

The district court determined that, because appellants "made a weak showing on three of the four *Hinz* factors, [appellants'] motion to vacate the April 18, 2007 Default Judgment is denied."

### 1. Reasonable Defense on the Merits

■ "A reasonable defense on the merits is one that, if established, provides a defense to the plaintiff's claim." *Northland Temporaries, Inc.*, 744 N.W.2d at 403. "Specific information that clearly demonstrates the existence of a debatably meritorious defense satisfies this factor." *Id.*

The district court concluded that appellants did not have a reasonable defense on the merits because the "fact that [husband's] benefits were in pay status when [appellants] received the proposed QDRO does not affect [respondent's] underlying right to her share of his pension benefits," citing *Trs. of Dirs. Guild of Am. v. Tise*, 234 F.3d 415, 421 (9th Cir.2000) ("Because a QDRO only renders enforceable an already-existing interest, there is no conceptual reason why a QDRO must be obtained before the plan participant's benefits become payable on account of his retirement or death."). The district court further concluded that husband's "election selecting his second wife as surviving beneficiary does not nullify [respondent's] underlying right to the pension benefits awarded her in the Judgment and Decree." The court noted that it "can understand why the

Plan Administrator had a problem providing [respondent] the pension benefits which the July 1, 2005 proposed QDRO ordered ... [because the QDRO] provided a conflicting Alternate Payee that did not coincide with [husband's] elections." The court nonetheless required that appellants pay respondent "those benefits she would have received pursuant to the Judgment and Decree but for [husband's] designation of Ms. James as his beneficiary and surviving annuitant."

■ We conclude that the district court's analysis on this factor was in error. Caselaw makes clear that surviving-spouse benefits vested in James on the date of husband's retirement. *See Hopkins v. AT & T Global Info. Solutions Co.*, 105 F.3d 153, 156 (4th Cir.1997) ("Surviving Spouse Benefits vest in the participant's current spouse on the date the participant retires."); *see also Singleton v. Singleton*, 290 F.Supp.2d 767, 771 (W.D.Ky.2003) ("Both ERISA and *Hopkins* set out the narrow exception, where a former spouse can be considered a surviving spouse if a QDRO is received prior to the 'triggering' event, in this case Defendant's retirement. Prior to Defendant's retirement, neither Fund received a DRO which could qualify as a QDRO.").

The district court's reliance on *Tise* fails to fully consider the implications of the holding of that case as compared to appellants' actions in this case. *Tise* stands for the proposition that "[ERISA] necessarily permits an alternate payee who has obtained a state law DRO before the plan participant's retirement, death, or other benefit-triggering event to perfect the DRO into a QDRO thereafter." 234 F.3d at 422. But this allowance presumes that appellants are at least on notice that there may be a valid QDRO before the participant retires. *Id.* That is not the situation

here. Appellants had no knowledge of respondent's right to husband's pension benefits accrued during the marriage and to surviving spouse benefits upon husband's death until nearly one year after husband retired and benefit payments commenced.

Moreover, once appellants were on notice of a potentially valid QDRO, they were prepared to accept that "[ERISA] specifically provides for situations in which no valid QDRO issues until after benefits become payable." *Id.* at 421. Appellants informed respondent regarding what she could do to remedy the defects in the proposed QDRO and the benefit amount available to her if she did so. But before respondent submitted a revised DRO, husband died, significantly limiting her benefit amount based on appellants' determination that she would only receive benefits during husband's lifetime. It is understandable that respondent was dissatisfied with this result, as it eliminated a significant monetary benefit provided for in the dissolution judgment and decree on which she apparently relied for many years. But as even the district court articulated: "Had [respondent] properly responded to the Plan when it initially rejected her QDRO, [husband] would have been alive to help correct the beneficiary designation."

Overall, the facts presented by appellants establish a debatably meritorious defense that they validly determined the DRO was not "qualified" under ERISA. As we concluded previously, the district court did not have jurisdiction to consider this issue, and therefore the district court abused its discretion in concluding that this factor weighed against appellants.

### 2. Due Diligence after Notice of Entry of Judgment

The parties do not dispute, and the district court agreed, that appellants acted with due diligence by bringing their motion to vacate in an appropriate and timely manner. Therefore, appellants made a strong showing of the third factor, weighing in favor of vacation of the default judgment.

### 3. No Substantial Prejudice

Vacating a default judgment does not significantly prejudice a party where the record does not indicate that evidence has been substantially affected or that witnesses are unavailable. *Riemer v. Zahn,* 420 N.W.2d 659, 662 (Minn.App. 1988). When the only prejudicial effect of vacating a default judgment is additional expense and delay, "substantial prejudice of the kind necessary to keep a judgment from being reopened does not exist." *Black v. Rimmer,* 700 N.W.2d 521, 528 (Minn.App.2005).

Despite citing this exact standard, the district court found that respondent would suffer substantial prejudice if the default judgment was vacated, stating:

> There is no dispute on which to have a trial. [Respondent] either has an interest in this pension plan or she does not. This court has found that she does. There is no reason to further delay her receipt of this benefit. Any delay would result in substantial prejudice to her.

Appellants argue that respondent cannot show substantial prejudice because she did not allege that vacating the default judgment and proceeding to trial would result in the loss of availability of witnesses or evidence that, appellants contend, "are the real building blocks of 'substantial' prejudice." Respondent argues that she would suffer prejudice because she has counted on the benefit payments for many years. Appellants counter that this reliance focuses on the wrong time period and was argued only to cause further delay. Appellants also note that

given the fact that [respondent] waited twelve years to obtain a DRO, allowed her benefits to vest in someone else, never followed-up or checked with her former husband or [appellants] to determine whether she was correctly named as [husband's] beneficiary, and failed to submit a revised DRO ... [her] reliance argument is without merit.

We agree with appellants that "delay is not a permissible justification for a finding of 'substantial' prejudice." The district court failed to consider whether respondent would suffer prejudice other than additional delay in receiving benefits. This factor should have weighed in favor of vacating the default judgment.

### 4. Reasonable Excuse for Failure or Neglect to Answer

■ Appellants' failure to timely file an answer was based on a mistake by appellants' counsel, who apparently thought that respondent's request for reconsideration in the family-court matter was still pending, and that the complaint was related to that matter—to which appellants were not parties—and not a new lawsuit requiring a responsive pleading. Appellants admit that their showing on this factor was weak.

But in light of our conclusion that the other three *Hinz* factors weigh in favor of vacating the default judgment, we conclude that those factors outweigh appellants' weak showing on this factor. The district court therefore abused its discretion in denying appellants' motion to vacate. *See Hill v. Tischer*, 385 N.W.2d 329, 332 (Minn.App.1986) (concluding that district court abused its discretion in denying motion to open default judgment because defendant, despite weakness of his excuse for not answering complaint, made strong showing on other three factors); *Spicer v. Carefree Vacations, Inc.*, 379 N.W.2d 728, 730–31 (Minn.App.1986) (agreeing with

district court that defendant's excuse for failing to answer was weak but reversing district court's denial of motion to vacate judgment given strong showing on other three factors); *Valley View, Inc., v. Schutte*, 399 N.W.2d 182, 186 (Minn.App. 1987) (concluding that district court abused its discretion in denying motion to vacate judgment because "weak showing on the reasonable excuse factor is outweighed by the other three factors"), *review denied* (Minn. Mar. 18, 1987); *Guillaume & Assoc., Inc. v. Don–John Co.*, 371 N.W.2d 15, 19 (Minn.App.1985) (holding that district court erred in entering default judgment because weak showing on excuse factor should have been weighed against strong showing on other three factors).

### III.

Minn. R. Civ. P. 60.02(f) provides for relief from a judgment for "any other reason justifying relief from the operation of the judgment." Relief under this residual clause is appropriate when "the equities weigh heavily in favor of [the defaulting party] and clearly require relief be granted to avoid an unconscionable result." *Wiethoff v. Williams*, 413 N.W.2d 533, 536 (Minn.App.1987).

Appellants argue that the default-judgment order and the order denying their motion to vacate are in conflict because they order appellants to commence benefit payments to respondent on different dates. Appellants further contend that, if they follow either order, they will be violating ERISA and therefore "the equities weigh heavily in favor of vacating the default judgment to allow the parties to litigate this matter on the merits."

Because we conclude that reversal of the district court is appropriate based on either of the two previous issues, we need not address this claim.

## DECISION

The district court lacked subject-matter jurisdiction to determine whether respondent's DRO is a QDRO for ERISA purposes. The district court abused its discretion in analyzing and balancing the *Hinz* factors to determine whether the default judgment should be vacated under Minn. R. Civ. P. 60.02.

**Reversed.**