*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0761**

Rebecca J. Adams, et al.,
Plaintiffs,

John Crudele, et al.,
Appellants,

vs.

James Koch, et al.,
Defendants,

Steve Hyland,
Respondent,

Erik Ostigaard,
Respondent,

Greg Bohnsack,
Respondent.

**Filed April 4, 2016
Affirmed
Connolly, Judge**

Hennepin County District Court
File No. 27-CV-11-19418

Christopher P. Parrington, Alissa N. Mitchell, Foley & Mansfield, PLLP, Minneapolis, Minnesota (for appellants)

Steve Hyland, St. Paul, Minnesota (pro se respondent)

Erik Ostigaard, Savage, Minnesota (pro se respondent)

Paul H. Weig, Jonathan R. Drewes, Drewes Law, PLLC, Minneapolis, Minnesota (for respondent Bohnsack)

Considered and decided by Connolly, Presiding Judge; Stauber, Judge; and Bjorkman, Judge.

## U N P U B L I S H E D   O P I N I O N

**CONNOLLY**, Judge

Appellant real estate investors challenge three district court orders: the first vacating default judgments against respondent Steve Hyland and respondent Gregory Bohnsack; the second dismissing Bohnsack from the case, with prejudice; and the third dismissing all claims against respondents Hyland and Erik Ostigaard following a court trial.  We affirm.

## FACTS

This case arises out of several real estate investments in Giants Ridge Golf Course & Ski Resort (Giants Ridge), located in Biwabik, Minnesota, and developed by the Iron Range Resource and Rehabilitation Board (IRRRB).  The State of Minnesota developed ski and golf areas at Giants Ridge and built Giants Ridge Lodge (the Lodge), a hotel and restaurant at the site.  In 2005, real estate developer James Koch purchased the Lodge and began to sell condos and villas, managing his development through his business entity, Wayzata Hospitality Group LLC.  On January 17, 2007, Koch signed a listing agreement giving Split Rock Realty the exclusive right to represent his development at Giants Ridge. Hyland and Ostigaard were real estate agents at Split Rock Realty, and Bohnsack as well as several others, were employed by Split Rock Realty and marketed units at Giants Ridge.

2

Appellant John Crudele and JC Recreational Properties, LLC

In 2007, appellant John Crudele heard about Giants Ridge and was approached to purchase units. Crudele met with Split Rock Realty employees, including Hyland, in 2007 to explore a possible investment in real estate. At this meeting, he was informed that he could purchase a single unit or five units (a five-pack), and that financing would be provided through American Bank of the North. With either option, he would receive an 18-month leaseback agreement. Crudele alleged at trial that he was told that any occupancy greater than 50% would cause the investment to be cash-flow neutral, meaning that he would not have to pay money out of pocket to maintain his investment. Crudele was informed (it is not clear by whom) that the past occupancy at Giants Ridge was greater than 50% and was projected to eclipse 60%.

Based on the initial meeting, Crudele was interested in learning more. Crudele testified that Hyland contacted him in July of 2007 and told him that Hyland felt it was best to hear the story and see the vision of what was possible from the developer, Mr. Koch. Hyland introduced Crudele to Koch at Koch's office and Crudele was shown illustrations of Koch's proposed future development, including a water park and a new chalet. Crudele claimed Hyland and Thomas Rosensteel (another named defendant in the district court case, but not part of this appeal) told Crudele he could earn a 12% return on a five-pack during the 18-month leaseback. Based upon his understanding and belief that this would be a good, safe, and lucrative investment, and based upon his desire to add real estate to his portfolio, Crudele initially purchased a five-pack for $1,255,000, and then a few months

3

later he purchased a villa property for $250,000, financing the property through American Bank of the North. The purchases were made in 2007.

The investment did not go as planned. Crudele claimed at trial that he lost approximately $289,000 on this investment. Crudele alleged that Hyland was his realtor and that he expected Hyland to look out for him and that Hyland gave him false information. At trial, when asked if the losses in the Giants Ridge investment could have been caused by the collapsing real estate market, Crudele replied that he believed his investment should have been immune to market forces because he was led to believe that people would continue to go on vacations even when the economy deteriorated, and therefore his investment in vacation real estate should have continued to be cash-flow neutral, regardless of fluctuations in the economy. Crudele testified that Rosensteel, not Hyland, Ostigaard, or Bohnsack, represented that people actually would start going on more staycations, instead of flying to destination resorts.

Crudele acknowledged at trial that the marketing materials he received before his purchase included a disclaimer, stating that "[Split Rock Realty] may not predict Investment Returns or Profits. All numbers are estimates based upon our best historical knowledge. We can not offer, nor is anything in this presentation meant to infer the offering of investment, legal or tax advice."

Appellants John Olson and Julie Olson

John Olson first heard of Giants Ridge from Ostigaard and Bohnsack of Split Rock Realty in late 2006. Olson claimed Ostigaard and Bohnsack told him that Giants Ridge was "a pretty good opportunity" in real estate and that it was a hands-off investment

4

property offering a nice return and invited Olson to tour Giants Ridge with his wife Julie. Olson testified that, during the Giants Ridge tour, Koch did most of the presentation of the tour but Ostigaard was present and did not correct anything said by Koch. After the tour of the unit, Olson went to the lobby where he listened to presentations about the units and discussed occupancy rates, general economic development, and the relationship with the IRRRB. Olson claimed he was told that the occupancy rates were "in the 50 percentile range and that they are projecting 60% and possibly consistently 60% going forward." Olson was shown a document discussing purchase and pricing amenities. The Olsons chose to purchase a unit and took out a loan which they expected would be cash-flow neutral.

The Olsons, like Mr. Crudele, lost money on the Giants Ridge investment. During the 18-month leaseback period, the investment performed as expected. Olson thought the leaseback would be renewed after the 18-month period expired, but he did not claim that either Hyland or Ostigaard promised him that would occur. Mr. Olson testified that without certain promises and representations regarding the continued returns and leaseback, and the promises of a new water park and buildings that never came to fruition, he and his wife would have never invested in Giants Ridge. Olson claimed to have incurred substantial out-of-pocket expenses in connection with the unit, including the down payment, the mortgage payments, the homeowner's association dues, property taxes, insurance, upkeep and legal expenses. Olson acknowledged that he saw the same marketing materials as Mr. Crudele and that the materials he received before his purchase included a disclaimer

5

stating that investment returns could not be predicted. Olson claims that he and his wife incurred damages in the total amount of $309,960.

The complaint in this matter was filed on September 22, 2011, and was later amended on June 6, 2012. While the original complaint alleged many more counts against other defendants, not before the court here, the only remaining claims against respondents, forming the basis of this appeal, are fraud, negligent misrepresentation, and promissory estoppel.

On March 13, 2012, a default hearing was held as a result of Bohnsack and Hyland's failure to file an answer to the complaint. Neither Bohnsack nor Hyland appeared. On March 19, 2012, default judgment was entered against Bohnsack in favor of the Olsons in the amount of $161,000 and against Hyland in favor of the Olsons in the amount of $161,000 and in favor of Crudele in the amount of $1,129,500. Both Bohnsack and Hyland made motions to vacate the default judgment. On June 11, 2012, a hearing was held on the motions to vacate the default judgments. On August 9, 2012, the district court granted Bohnsack and Hyland's motions to vacate the default judgment finding that Bohnsack and Hyland made an adequate showing in light of our supreme court's policy of liberally opening default judgments. *See Hinz v. Northland Milk & Ice Cream Co.*, 237 Minn. 28, 30, 53 N.W.2d 454, 455-56 (1952).

On June 6, 2012, while the motions to vacate were pending, appellants filed an amended complaint which did not name Bohnsack as a defendant in the caption, nor did it assert any causes of action against Bohnsack. At a hearing on November 13, 2012, after the motion to vacate had been granted, the district court judge gave appellants until

6

November 14, 2012 to clarify the status of any claims they may have against Bohnsack. Appellants failed to respond to the district court order. By letter dated November 30, 2012, Bohnsack's attorney requested that his client be dismissed from the suit or an order be issued giving appellants a deadline to further amend the complaint and bring claims against Bohnsack. Based on the appellants' failure to clarify Bohnsack's status as a defendant, on December 28, 2012, the district court dismissed all claims appellants may have had against Bohnsack with prejudice. Appellants did not take any steps to amend the complaint to include any claims against Bohnsack between the time the default judgment was vacated and the order dismissing Bohnsack with prejudice.

On September 25, 2014, a court trial was held concerning the claims against Hyland and Ostigaard. Appellants sought a judgment for fraud, negligent misrepresentation, and promissory estoppel against Hyland and a default judgment against Ostigaard for fraud, misrepresentation, and promissory estoppel based upon his failure to appear and present a defense. At trial, Hyland (the only defendant who appeared at trial) expressed his regret that appellants' purchases at Giants Ridge had not turned out better but asserted that he made no misrepresentations in his dealings with either the Olsons or Crudele. Hyland believed that when he discussed future plans for Giants Ridge, he believed they were presented as projections, and not as certainties. Hyland believed that the failings in the investment in Giants Ridge were a product of market forces and the extreme downturn in the economy and the real estate market in 2008, and not due to any lack of disclosure on his part.

Following the trial, in a December 19, 2014 order the district court, in a thoughtful and well-reasoned opinion found that the appellants

> failed to establish a basis for a claim of fraud against either Hyland or Ostigaard. [Appellants] were vague about any specific representations made by Hyland and Ostigaard, other than to claim the real estate agents led them to believe their investments in Giants Ridge would be safer, more hands-off, and more lucrative than they turned out to be.

The district court found that both appellants received and read the disclaimers and the appellants offered no evidence that Hyland or Ostigaard believed, at the time appellants purchased their units that the statements they made were untrue. Furthermore, the district court found that respondents did not commit any negligent misrepresentations because they did not represent false facts or make material omissions.

## D E C I S I O N

I.   **Did the district court abuse its discretion in vacating the default judgment against Hyland and Bohnsack?**

"This court will not overturn a ruling on a motion to vacate a default judgment unless the district court abused its discretion." *Roehrdanz v. Brill*, 682 N.W.2d 626, 631 (Minn. 2004). "[T]he supreme court has held that, 'if the [district] court has acted under a misapprehension of the law,' the decision will be reversed on appeal even though the opening of a default judgment 'lies almost wholly within the sound discretion of the [district] court.'" *Northland Temps., Inc. v. Turpin*, 744 N.W.2d 398, 402 (Minn. App. 2008) (quoting *Sommers v. Thomas*, 251 Minn. 461, 469, 88 N.W.2d 191, 196-97 (1958), *review denied* (Minn. Apr. 29, 2008)).

8

Respondents filed their motions to vacate pursuant to Minn. R. Civ. P. 60.02(a) claiming "mistake, inadvertence, surprise, or excusable neglect." Under Minnesota law, vacating a default judgment for mistake, inadvertence, surprise, or excusable neglect requires: (1) the party must have a reasonable defense on the merits; (2) the party must have a reasonable excuse for his failure to answer; (3) the party must have acted with due diligence after notice of the entry of judgment; and (4) no substantial prejudice will result to other parties. *Coller v. Guardian Angels Roman Catholic Church*, 294 N.W.2d 712, 715 (Minn. 1980); s*ee Hinz*, 237 Minn. at 30, 53 N.W.2d at 456. The moving party bears the burden of proving all four of the elements. *Imperial Premium Fin., Inc. v. GK Cab Co.*, 603 N.W.2d 853, 857 (Minn. App. 2000) (citing *Nelson v. Siebert*, 428 N.W.2d 394, 395 (Minn. 1988)). "A strong showing on the other factors may offset relative weakness on one factor." *Id.* (citing *Armstrong v. Heckman*, 409 N.W.2d 27, 29 (Minn. App. 1987), *review denied* (Minn. Sept. 18, 1987)). "Default judgments are to be 'liberally' reopened to promote resolution of cases on the merits." *Id.* (citing *Galatovich v. Watson*, 412 N.W.2d 758, 760 (Minn. App. 1987).

Appellants argue that Hyland and Bohnsack could not possibly demonstrate a reasonable defense on the merits or a reasonable excuse. At the district court level appellants conceded that the respondents acted diligently in pursuing vacation of the default judgment and that the appellants would not be prejudiced by a vacation of the default judgment.

In granting relief from a default judgment, "[t]he existence of a reasonable defense on the merits must ordinarily be demonstrated by more than conclusory allegations in

9

moving papers." *Imperial Premium Fin., Inc.*, 603 N.W.2d at 857. To show that respondents do not have a reasonable defense on the merits, appellants argue that the district court identified only a single piece of evidence—that Hyland and Bohnsack denied the claims against them. This was not the only defense that Hyland and Bohnsack, both representing themselves pro se, presented. The district court found that there was a significant and material dispute regarding the underlying facts and thus there was a satisfactory showing that the respondents possessed a defense on the merits. Both Bohnsack and Hyland submitted affidavits in support of their motions to vacate the default judgment. In his affidavit Hyland argued that his interactions with the Olsons were very limited and that he made no misrepresentations during their conversations. Hyland discussed the claims in detail, disputing appellants' factual characterization of the events. Bohnsack's affidavit and attachments thereto indicated that he believed whole-heartedly in the project at the time; that he was not an official buyer's representative; and that he had extremely limited contact with the Olsons. These facts amount to more than mere conclusory allegations in moving papers and thus the district court did not abuse its discretion in finding that respondents had a reasonable defense on the merits.

Next, appellants argue that neither Hyland nor Bohnsack demonstrated a reasonable excuse for their failure to answer. The district court found that both Hyland and Bohnsack demonstrated a reasonable excuse for their failure to answer because "even though [they] did not properly file answers with [appellants] or with the court, each respondent attempted to participate in his own defense."

10

Respondents do not dispute that they received the summons and complaint, but both thought they had answered the summons and complaint, either by e-mailing the answer to the law firm representing appellants or by participating in settlement negotiations. Although some accommodations may be made for pro se litigants, pro se litigants are generally held to the same standards as attorneys and must comply with court rules. *Fitzgerald v. Fitzgerald*, 629 N.W.2d 115, 119 (Minn. App. 2001). However, pro se pleadings are to be liberally construed. *State ex rel Farrington v. Rigg*, 259 Minn. 483, 483, 107 N.W.2d 841, 841-42 (1961). Because each respondent put forth a diligent effort to defend himself, and reported difficulty in sustaining a correspondence with opposing counsel, the district court did not abuse its discretion in finding that the respondents had reasonable excuses for failing to properly answer.

Because the district court did not abuse its discretion in finding that the respondents had a reasonable defense on the merits or that the respondents demonstrated a reasonable excuse for their failure to answer, we affirm the district court order vacating the default judgment against Bohnsack and Hyland.

**II.    Did the district court err in granting dismissal of all claims against Bohnsack with prejudice?**

"The court may upon its own initiative, or upon motion of a party, and upon such notice as it may prescribe, dismiss an action or claim for failure to prosecute or to comply with these rules *or any order of the court*." Minn. R. Civ. P. 41.02 (emphasis added). The purpose of the rule is to "let the [district] court manage its docket and eliminate delays and obstructionist tactics by use of the sanction of dismissal. If a party . . . fail[s] to comply

11

with . . . an order of the court, the judge may dismiss the case with or without prejudice." *Lampert Lumber Co. v. Joyce*, 405 N.W.2d 423, 425 (Minn. 1987). A district court has "wide discretion in determining whether dismissals shall be with or without prejudice." *Falkenstein v. Braufman*, 251 Minn. 444, 452, 88 N.W.2d 884, 889 (1958). This court reviews the district court's dismissal of a complaint under Minn. R. Civ. P. 41.02(a) for an abuse of discretion. *Bonhiver v. Fugelso, Porter, Simich & Whiteman, Inc.*, 355 N.W.2d 138, 144 (Minn. 1984).

Bohnsack was a named defendant in the complaint filed on September 22, 2011, and a default judgment was entered against Bohnsack on March 14, 2012. On May 3, 2012, Bohnsack filed a motion to vacate the default judgment. While the motion was pending, appellants filed an amended complaint which did not name Bohnsack as a defendant in the caption. At a hearing on an unrelated matter on November 13, 2012, Bohnsack's attorney made an appearance and requested clarification on the status of Bohnsack in the case. Appellants' attorney could not provide a definitive answer. The district court noted the request for clarification and ordered appellants' attorney to get the clarification to the court by the next day. No clarification was ever made on behalf of appellants. By a letter dated November 30, 2012, Bohnsack's attorney requested that his client be dismissed from this suit or an order be issued giving appellants a deadline to further amend the complaint and bring claims against Bohnsack. Appellants' counsel alleges that he did not receive a copy of the November 30 letter.

Regardless of whether or not the letter was received, appellants failed to clarify the status of Bohnsack as ordered by the district court. Although the court only gave

appellants' counsel until the following day to clarify the status of the case, the district court did not grant the order dismissing Bohnsack with prejudice for over a month. At the time of the order, appellants still had not clarified the status of Bohnsack. Because the appellants failed to comply with the district court order, the district court did not abuse it's discretion in dismissing the case with prejudice.

Additionally, the district court did not err in dismissing claims against Bohnsack because at that time there were no claims to be dismissed. The amended complaint replaced the complaint at the time it was filed. This operated as a voluntary dismissal of all claims against Bohnsack by the appellants. Had the district court chosen not to issue the order dismissing Bohnsack, or forgotten about Bohnsack, there would have still been no claims to be brought against Bohnsack at trial. We find no error in the district court's grant of a dismissal with prejudice.

III. **Did the district court err in dismissing all claims against Hyland and Ostigaard following a court trial?**

Appellants argue that the district court erred in dismissing all claims against Hyland and Ostigaard following a court trial.

> [W]e review the district court's factual findings for clear error. That is, we examine the record to see if there is reasonable evidence in the record to support the court's findings. And when determining whether a finding of fact is clearly erroneous, we view the evidence in the light most favorable to the verdict. To conclude that findings of fact are clearly erroneous we must be left with the definite and firm conviction that a mistake has been made.

13

*Rasmussen v. Two Harbors Fish Co.*, 832 N.W.2d 790, 797 (Minn. 2013) (citations omitted).

The district court held that there was insufficient evidence to support a finding that either Hyland or Ostigaard made fraudulent misrepresentations to either Crudele or the Olsons in connection with their purchases at Giants Ridge.  Under Minnesota law, the elements of fraudulent misrepresentation are:  (1) there must be a representation; (2) that representation must be false; (3) it must have to do with a past or present fact; (4) that fact must be material; (5) it must be susceptible of knowledge; (6) the representor must know it to be false, or must assert it as of his own knowledge without knowing whether it is true or false; (7) the representor must intend to have the other person induced to act, or justified in acting upon it; (8) that person must be so induced to act or so justified in acting; (9) that person's action must be in reliance upon the representation; (10) that person must suffer damage; (11) that damage must be attributable to the misrepresentation, that is, the statement must be the proximate cause of the injury.  *Davis v. Re-Trac Mfg. Corp.*, 276 Minn. 116, 117, 149 N.W.2d 37, 39 (1967).

Appellants argue that Crudele and Olson testified extensively regarding each of these elements.  They allege that Crudele and Olson's testimony showed that Hyland made numerous representations regarding planned developments at Giants Ridge, regarding the safe and hands-off nature of the investment, and regarding certain interest rates, rates of return and leaseback arrangements, "to name a few."  The key fraud factor in dispute is whether the representations were false at the time they were made.

14

The district court's finding that respondents did not make material misrepresentations regarding planned developments at Giants Ridge was not clearly erroneous. The district court found that both Crudele and Olson testified that respondents introduced them to Koch, so that they could make their own inquiries about Giants Ridge directly to the developer. This evidence is supported by Crudele and Olson's testimony. Crudele testified that Hyland "felt it was best to hear it from the developer, hear the story and see the vision of what was possible." Olson testified that when he was shown the property and the future developments were discussed "it was still Jim doing most of the conversation presentation."

The district court's finding that appellants were not misinformed about real estate purchases they made at Giants Ridge is not clearly erroneous. Crudele testified that he was told that the 18-month leaseback "was the guarantee, but with the historical occupancy rates [he] could be assured . . . that would continue going forward," but he did not testify that it was Hyland or Ostigaard that said it, only that he discussed it at a meeting with Rosensteel and Hyland. This meeting was prior to receiving marketing materials and meeting with the actual developer, Mr. Koch. The marketing materials included a disclaimer which stated: "[Split Rock Realty] may not predict Investment Returns or Profits. All numbers are estimates based upon our best historical knowledge. We can not offer, nor is anything in this presentation meant to infer the offering of investment, legal or tax advice." Both Olson and Crudele acknowledged that they had seen the disclosure.

Crudele testified that Hyland told him that "with the historical rates, that anything over 50% would cash flow the investment, the hands off investment." Hyland did not

15

represent that the investment was cash-flow or hands-off, but rather if occupancy rates exceeded 50% then that would cash flow the investment and make it hands off.  Hyland and Ostigaard had reason to believe that occupancy rates exceeded 50%.  Testimony of Koch and material admitted into evidence during Koch's testimony, indicated that occupancy rates were 43.63% in 2005, 53.38% in 2006 and increased to 55.29% in 2007.  At the time of the statements, Hyland and Ostigaard had no reason to believe that occupancy rates would not exceed 50%, even though occupancy rates had not done so prior to 2006.

The district court found that appellants offered no evidence that Hyland or Ostigaard believed, at the time appellants purchased their units at Giants Ridge, that such investments would be unsafe, would require hands-on management, or would lose money.  Appellants have shown nothing in the record that disputes the district court finding.  The district court credited Hyland's testimony that what happened "had to do with a horrible, historically horrible real estate market that we all went through."  We agree.  The losses at Giants Ridge were triggered by a general economic downturn, which none of the parties could foresee at the time appellants purchased their units.  Furthermore, the district court credited Hyland's testimony that when he discussed plans for Giants Ridge, they were presented as projections, and not as certainties.

Appellants allege that "[e]ach of these representations was false at the time they were made" yet appellants can point to no specific point in the record that supports this proposition.  For this reason, appellants' claims for negligent misrepresentation also fail.

16

*See Florenzano v. Olson*, 387 N.W.2d 168, 173 (Minn. 1986) ("Fraud is distinguished from negligence by the element of scienter required.")

Appellants also allege that the district court findings are clearly erroneous in regard to Ostigaard, because Ostigaard failed to rebut the evidence proffered by appellants at trial. We conclude that appellants failed to meet the prima facie element for fraudulent misrepresentation which is to show that the representations were false at the time they were made. Therefore Ostigaard need not rebut any evidence. Because appellants fail to point to any evidence in the record to show that the statements were false at the time they were made, appellants have not shown that the findings of the district court were clearly erroneous.

Because the district court's findings that appellants failed to state a claim were not clearly erroneous, we affirm the district court's dismissal of all claims against respondents.

**Affirmed.**