*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1910**

Anita Haider, as Personal Representative
of the Estate of Evi E. Kari,
Respondent,

vs.

Kenneth Kari,
Appellant.

**Filed July 11, 2016
Affirmed in part and reversed in part
Hooten, Judge**

Lake County District Court
File No. 38-CV-14-363

Martin A. Carlson, Law Offices of Martin A. Carlson, Ltd., Minneapolis, Minnesota; and

Robert V. Espeset, Espe Law, PLLC, White Bear Lake, Minnesota (for respondent)

Kenneth Kari, Two Harbors, Minnesota (pro se appellant)

    Considered and decided by Halbrooks, Presiding Judge; Hooten, Judge; and Smith,

John, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**HOOTEN**, Judge

Pro se appellant challenges the district court's denial of his motion to vacate a default judgment entered against him in a civil action, arguing that the district court abused its discretion by denying the motion. Because there is no merit to appellant's claims that the default judgment should be vacated on the basis that it was a product of respondent's misrepresentations, his excusable neglect, and errors of law, we conclude that the district court did not abuse its discretion in denying appellant's motion on these grounds. However, because there is insufficient evidentiary support for doubling a portion of the damages under Minn. Stat. § 525.392 (2014), we conclude that the district court abused its discretion in not vacating the default judgment in part. Therefore, we affirm in part and reverse in part.

## FACTS

Evi E. Kari, the decedent, died on May 7, 2012, and was survived by three adult children, appellant Kenneth Kari, respondent Anita Haider, and Ronald Kari. In her will, decedent provided that all of her assets not devised by specific bequest were to be divided equally among her surviving children and nominated appellant as her personal representative. The current dispute involves the decedent's assets that were not devised by specific bequest, primarily consisting of financial accounts and three vehicles. In total, these disputed assets are valued at $89,456.44. The largest of the disputed assets is a certificate of deposit (CD) that is valued at $64,822.55.

Respondent filed the decedent's will with the probate court in December 2012. Even though appellant had been nominated as the personal representative under the will, the probate court appointed respondent as personal representative of the decedent's estate in June 2013. Appellant was deposed in the probate matter on September 6, 2013. In January 2014, respondent's counsel sent a letter to appellant's then-counsel, demanding that appellant turn over the disputed assets to the estate.

On April 17, 2014, respondent filed an inventory with the district court that included the disputed assets. By two orders filed on July 10, 2014, and August 4, 2014, the district court approved the inventory and ordered appellant to turn over all of the assets of the estate identified in the inventory to respondent as the personal representative within ten days of the orders.

In order to recover the value of the disputed assets, on August 27, 2014, respondent commenced a separate civil action in her capacity as personal representative by effecting personal service of the summons and complaint upon appellant. In the complaint, respondent claimed that appellant was indebted to the estate for double damages pursuant to Minn. Stat. § 525.392 and requested that appellant be ordered to pay respondent's attorney fees pursuant to Minn. Stat. § 524.3-720 (2014). On September 3, 2014, seven days after being served with the complaint, appellant, who was unrepresented at the time he was served with the summons and complaint, sent a handwritten letter addressed to three state agencies and the Internal Revenue Service (IRS) and carbon copied respondent's attorney on the letter. The subject line of this letter read as follows: "Mother's Probate—Theft, Attempted Extortion, Fraud and Slander. By [respondent's attorney]." The letter

also stated, "Besides the items shown in the subject [l]ine above, swindling, abuse and harassment will be included" and "[t]here are a lot of 'red flags' to report."

Respondent served appellant notice of her motion for a default judgment or for summary judgment on September 16, 2014, and with her supporting memorandum of law on October 30, 2014. Appellant did not respond to the motion and made no appearance when the district court heard respondent's motion on December 2, 2014. In an order dated December 8, 2014, the district court granted respondent's motion and entered judgment in favor of respondent in the amount of $181,167.88. This sum consisted of $89,456.44 in damages for the value of the disputed assets, an equivalent amount as double damages pursuant to section 525.392, and $2,255 in attorney fees pursuant to section 524.3-720. Appellant did not appeal the default judgment.

Respondent began proceedings to enforce the judgment in the spring of 2015. On August 4, 2015, appellant, now represented by counsel, filed a motion to vacate the judgment. By an order filed on September 28, 2015, the district court denied appellant's motion to vacate the judgment. This appeal followed.

## D E C I S I O N

Appellant argues that the district court abused its discretion by denying his motion to vacate the default judgment pursuant to Minn. R. Civ. P. 60.02. Rule 60.02 provides that a district court may vacate a final judgment because of misrepresentation of an adverse party, excusable neglect, or "[a]ny other reason justifying relief from the operation of the judgment." "Because the goal of litigation is to reach a resolution of disputes on the merits, courts should be liberal in opening default judgments." *Westfield Ins. Co. v. Wensmann,*

4

*Inc.*, 840 N.W.2d 438, 449 (Minn. App. 2013) (quotation omitted), *review denied* (Minn. Feb. 26, 2014).  Whether to open a judgment rests within the district court's discretion and is reviewed for an abuse of discretion.  *Palladium Holdings, LLC v. Zuni Mortg. Loan Trust 2006-OA1*, 775 N.W.2d 168, 173 (Minn. App. 2009), *review denied* (Minn. Jan. 27, 2010).

A district court's discretion in vacating a judgment, however, is limited by the application of the four *Hinz* factors.  *Northland Temporaries, Inc. v. Turpin*, 744 N.W.2d 398, 402 (Minn. App. 2008), *review denied* (Minn. Apr. 29, 2008).  The *Hinz* factors provide that when considering whether to grant a movant relief from a judgment, a court must consider whether the movant has: "(1) a reasonable defense on the merits; (2) a reasonable excuse for the failure or neglect to answer; (3) acted diligently after notice of entry of the judgment; and (4) demonstrated that no prejudice will occur to the judgment creditor."  *Id.* (citing *Hinz v. Northland Milk & Ice Cream Co.*, 237 Minn. 28, 30, 53 N.W.2d 454, 456 (1952)).  We may reverse a district court's denial of a motion to vacate if the district court acts under a misapprehension of law or fact.  *See Northland Temporaries*, 744 N.W.2d at 402–05 (reversing denial of motion to vacate where district court misapprehended law and fact when applying two *Hinz* factors).

**Misrepresentation of Adverse Party**

First, appellant argues that the default judgment should be vacated because of respondent's misrepresentations.  The district court awarded respondent double damages pursuant to section 525.392.  This section provides that "[i]f any person embezzles, alienates, or converts to personal use any of the personal estate of a decedent or ward *before*

5

the appointment of a representative, such person shall be liable for double the value of the property so embezzled, alienated, or converted." Minn. Stat. § 525.392 (emphasis added).

While appellant argues that respondent obtained the default judgment by misrepresenting to the district court that appellant had converted estate assets before respondent's appointment as personal representative, he identifies no specific misrepresentation that respondent or her counsel perpetrated on the district court. While appellant identifies alleged errors made by the district court in applying the law, rule 60.02 states that vacation of a default judgment may be granted on the grounds of "misrepresentation[] or other misconduct *of an adverse party*." Minn. R. Civ. P. 60.02(c) (emphasis added). Because appellant fails to identify any misrepresentation of respondent with regard to the district court's finding of double liability, this does not provide a basis for vacating the default judgment.

Appellant argues that respondent obtained the default judgment by misrepresenting to the district court that he had not served an answer to the complaint. This argument is without merit. Respondent attached appellant's alleged answer, the September 3, 2014 letter, as an exhibit to an affidavit in support of her motion for default judgment. Respondent's attorney also informed the district court of appellant's letter at the default judgment hearing. Because respondent presented appellant's letter to the district court, she did not misrepresent to the district court that appellant had not answered the complaint, as the district court was made aware of the letter and had the opportunity to determine whether, as a legal issue, the letter constituted an answer.

Furthermore, the district court did not err in determining that appellant's letter was not an answer. Minn. R. Civ. P. 8.02 states that "[a] party shall state in short and plain terms any defenses to each claim asserted and shall admit or deny the averments upon which the adverse party relies." "Each averment of a pleading shall be simple, concise, and direct." Minn. R. Civ. P. 8.05(a).

Appellant was served with the summons and complaint on August 27, 2014. Appellant argues that his September 3, 2014 letter constitutes an answer. Appellant's "answer" consisted of a handwritten letter addressed to three state agencies and the IRS. Respondent's attorney was carbon copied on the letter. The subject line of the letter read "Mother's Probate—Theft, Attempted Extortion, Fraud and Slander. By [respondent's attorney.]" The letter then stated, "An accurate account in [l]etter form will be forthcoming to all government offices as shown above. Besides the items shown in the subject [l]ine above, swindling, abuse and harassment will be included." The letter then included a recitation of appellant's professional accomplishments before stating that "[t]here are a lot of 'red flags' to report." The district court concluded that the letter did not constitute an answer and granted respondent's motion for default judgment.

The Minnesota Supreme Court stated in *Walsh v. U.S. Bank, N.A.* that "Minnesota is a notice-pleading state and does not require absolute specificity in pleading, but rather requires only information sufficient to fairly notify the opposing party of the claim against it." 851 N.W.2d 598, 604–05 (Minn. 2014) (quotation omitted). We conclude that the district court did not err in determining that appellant's letter was not an answer, as the

7

information it contained was not sufficient to notify respondent of appellant's response to the claims alleged in the complaint.

Appellant next argues that respondent's memorandum of law in support of her default judgment misstated the law regarding what is required for a document to constitute an answer. But, as respondent presented the district court with the caselaw that allegedly supported its interpretation of the law, this cannot be considered a misrepresentation to the court. Instead, the district court had the opportunity to review the law cited by respondent to determine whether it supported respondent's position. We conclude that the district court did not abuse its discretion by determining that respondent's alleged misrepresentations did not provide a basis for vacating the default judgment.

**Excusable Neglect**

Appellant argues that the default judgment was obtained as a result of his excusable neglect and that the district court therefore abused its discretion by denying his motion to vacate. Specifically, appellant argues that his failure to respond was excusable neglect because he suffers from macular degeneration and has very poor eyesight, causing him difficulties in reading documents. In denying appellant's motion to vacate the default judgment, the district court considered the *Hinz* factors and determined that they did not weigh in favor of vacating the judgment. Appellant asserts that the district court erroneously applied the *Hinz* factors in denying his motion to vacate.

As to the first factor, which requires that appellant have a reasonable defense on the merits, the district court stated that appellant "may have had a reasonable defense on the merits with regard to some of the claims made by the estate, but did not have a reasonable

8

claim on other aspects." Appellant argues that he has a reasonable defense on the merits because the evidence shows that the estate was not entitled to all of the amounts claimed or to a double recovery. There is substantial evidence in the record that appellant converted the largest of the disputed assets, the CD. Although the names of both the decedent and appellant were on the account, appellant testified in his deposition in the probate matter that the money in the account belonged to the decedent and that her intent was that the CD would be divided equally among her children upon her death. Furthermore, respondent provided evidence that appellant liquidated the CD on the date of its maturity, despite a court order requiring that it be turned over to the estate. Appellant offers no meaningful defense for refusing to turn over the CD to the estate and, instead, liquidating it. Likewise, appellant offers very little defense regarding respondent's claim that he converted the remaining disputed assets. Rather, appellant argues that he has a defense to being subject to double liability under section 525.392 because he acted in good faith with regard to the estate's assets before respondent was appointed personal representative.

The Minnesota Supreme Court has stated there is a good faith defense to double liability under section 525.392:

> Where there is an honest belief that the property belongs to the one charged with the conversion of it or where he honestly believes that he has a right to possession of it, he should not be subjected to double liability merely because he is unable ultimately to establish such ownership or right of possession. Cases do arise in which there is a genuine question of ownership. . . . A party who believes that he is the owner of property should not be subjected to double liability merely because he asserts his right and happens to lose in the end, if he acts in good faith.

9

*Chard v. Darlington*, 243 Minn. 489, 498–99, 68 N.W.2d 405, 411 (1955).

Appellant does not dispute that he failed to turn over all of the disputed assets to respondent as the personal representative as he had been ordered to do or that he converted some of the disputed assets. However, because he asserts a defense of good faith to double liability under section 525.392 on the basis that he was acting on behalf of the estate as the personal representative named in the decedent's will, this factor seems to weigh somewhat in favor of vacating the judgment.

Regarding the second factor, requiring a reasonable excuse for the failure to answer, the district court concluded that there was no reasonable excuse. Appellant argued to the district court that he had a reasonable excuse because he has bad eyesight and the complaint and the default judgment motion were printed in small font. The district court rejected this argument, stating that appellant's excuse was not "a reasonable excuse for not responding in any substantive way to the complaint." The district court further observed that appellant "apparently was able to read [the complaint] well enough to have it serve as a basis for complaints he made to the Office of Lawyer's Professional Responsibility . . . , the IRS, and other government agencies." We conclude that the record supports the district court's determination that appellant's poor eyesight did not provide a reasonable basis for failing to respond to the complaint.

The third factor requires that the movant act diligently after the entry of judgment. The final judgment against appellant was entered on December 8, 2014, and appellant filed his motion to vacate on August 4, 2015, almost eight months later. As the district court observed, appellant filed his motion to vacate only after respondent began efforts to enforce

10

the judgment.  Rule 60.02 requires that a motion to vacate on the ground of excusable neglect be made within a reasonable time, and "not more than one year after the judgment . . . was entered."  Minn. R. Civ. P. 60.02.  Because appellant moved to vacate the default judgment nearly eight months after the entry of judgment, despite being served with the summons and complaint, the notice of a hearing for a default or summary judgment motion, the motion papers, and the notice of entry of judgment, the district court properly determined that appellant's showing on this factor does not weigh in favor of vacation.  *See Reid v. Strodtman*, 631 N.W.2d 414, 419 (Minn. App. 2001) (concluding that movant failed to act diligently to vacate default judgment when movant was aware of hearing date but brought motion to vacate seven months later).

Finally, the fourth factor requires that the moving party demonstrate that no prejudice will occur to the judgment creditor if the motion to vacate is granted.  Ordinarily, the delay and expense of additional litigation are not sufficient to show prejudice under rule 60.02.  *Hovelson v. U.S. Swim & Fitness, Inc.*, 450 N.W.2d 137, 142 (Minn. App. 1990), *review denied* (Minn. Mar. 16, 1990).  However, this court has created an exception to this rule:

> If it is perceived by the [district] court that there is intentional ignoring of process, the additional expense must be viewed in a different light.  To force a claimant to go to the expense of a hearing in court, to gather evidence and expert testimony and the concomitant preparation, all either by inexcusable neglect or by intent, colors the prejudice with a deeper hue.

*Id.*

Here, the district court concluded that appellant had not met his burden of showing that respondent would not suffer prejudice. Specifically, the district court stated that appellant had been converting estate assets for over three years and that "[i]t will likely be impossible to untie this Gordian knot, even if one could presume that [appellant] would be predisposed to cooperate with [respondent]." Here, as the district court noted, appellant failed to file an answer or participate in the underlying proceedings. Moreover, the district court stated that, "[i]n [its] view, [appellant's] motion [to vacate] only came about because [respondent] was attempting to collect on the judgment in May and June of 2015." Under these circumstances, the district court properly determined that appellant did not meet his burden of establishing lack of prejudice.

Because appellant has demonstrated, at most, one of the four *Hinz* factors, we conclude that the district court did not abuse its discretion by concluding that excusable neglect did not provide a basis for vacating the default judgment.

**Any Other Reason Justifying Relief**

Appellant argues that the default judgment should be vacated under Minn. R. Civ. P. 60.02(f), which provides that a district court may vacate a judgment for "[a]ny other reason justifying relief from the operation of the judgment." "Relief under this residual clause is appropriate when the equities weigh heavily in favor of the party seeking relief and relief is required to avoid an unconscionable result." *Hovelson*, 450 N.W.2d at 142–43. Appellant argues that the default judgment should be vacated because the district court committed judicial error in ordering that he pay respondent's attorney fees and because the district court granted the default judgment for double the value of the disputed assets where

12

there was no evidence that the assets had been converted before the appointment of the personal representative, as required for double liability under section 525.392.

With regard to the attorney fees, appellant correctly argues that the district court, in its order granting the default judgment, erred by ordering that appellant personally pay the attorney fees of respondent in her capacity as personal representative of the estate in the amount of $2,255, pursuant to section 524.3-720. Section 524.3-720 provides that a personal representative who prosecutes a proceeding in good faith is entitled to receive certain expenses, including attorney fees, from *the estate*, not from an individual. Therefore, the district court erred in ordering appellant to pay respondent's attorney fees. Upon appellant's motion to vacate the default judgment, the district court acknowledged appellant's argument regarding the attorney fees, but determined that the arguments were in the nature of a motion for reconsideration.

Rule 60.02 is not the proper means to raise alleged judicial error. *See Reid*, 631 N.W.2d at 420; *Sullivan v. Spot Weld, Inc.*, 560 N.W.2d 712, 716 (Minn. App. 1997) ("Rule 60.02 is limited to the specific situations provided for in the rule itself and does not allow for general correction of judicial error." (quotation omitted)), *review denied* (Minn. Apr. 27, 1997); *Arzt v. Arzt*, 361 N.W.2d 135, 136 (Minn. App. 1985) ("Rule 60.02 is intended to correct mistake or inadvertence of a party, or to allow for newly discovered evidence *not to correct for judicial error*." (emphasis added)). The reasoning behind this rule is that allowing for the correction of judicial error through rule 60.02 would effectively extend the time for appeal beyond the deadlines provided for in the court rules. *See Carter v. Anderson*, 554 N.W.2d 110, 114 (Minn. App. 1996). Because rule 60.02 cannot be used

13

to correct judicial error, we conclude that the district court did not abuse its discretion by refusing to vacate the default judgment because of the error regarding the award of attorney fees.

Although this court has stated that rule 60.02 cannot be used for the correction of judicial error, we have granted relief under rule 60.02(f) where the default judgment was entered despite a party's failure to prove an element of their claim. *See Wiethoff v. Williams*, 413 N.W.2d 533, 537 (Minn. App. 1987) (vacating default judgment of $20,000 where district court heard no evidence regarding plaintiff's damages other than plaintiff's claims and where district court's findings were primarily taken directly from complaint); *Hill v. Tischer*, 385 N.W.2d 329, 332 (Minn. App. 1986) (concluding default judgment should be vacated where plaintiff failed to show liability or explain how she arrived at damages amount).

A party seeking default judgment has the burden of proving every essential element of his or her case. *Hill*, 385 N.W.2d at 332 (quotation omitted). In moving for a default judgment, respondent presented evidence showing that appellant had failed to turn over the disputed assets despite a request from respondent's attorney and two court orders. Respondent provided no evidence, however, regarding appellant's conversion of a number of the disputed assets *before* respondent was appointed personal representative of the estate, as required for the imposition of double liability pursuant to section 525.392. As respondent presented no evidence regarding the conversion of some of the disputed assets before the appointment of the personal representative, we conclude that the district court abused its discretion by failing to vacate the default judgment in part.

However, based on the record, we conclude that respondent presented sufficient evidence to the district court in connection with its motion for default judgment for the imposition of double liability with regard to three of the disputed assets. The record contains some evidence that appellant converted these three assets before respondent was appointed personal representative. Conversion is "an act of willful interference with personal property, done without lawful justification by which any person entitled thereto is deprived of use and possession." *DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997) (quotation omitted).

The record indicates that before June 2013, when respondent was appointed personal representative, appellant traded in the decedent's Ford Fusion and one of his own vehicles in order to acquire a different vehicle for his personal use. There is evidence in the record that appellant sold decedent's Ford F-150 to himself before June 2013, turned over one-third of the proceeds to his brother and set aside a share of the proceeds for his sister but did not turn it over to her. The record also reflects that, shortly after the decedent's death in May 2012, appellant depleted one of her checking accounts by using the funds to pay for his brother's living expenses. Because this evidence supports respondent's contention that appellant converted these assets before June 2013, we conclude that the district court properly ordered judgment against appellant for double the value of these assets. Even if the district court erred by concluding that appellant's conduct with regard to these assets constituted conversion, we would uphold the district court's imposition of double liability with regard to these assets because "[r]ule 60.02 . . . does not allow for correction of judicial error." *Reid*, 631 N.W.2d at 420.

15

However, the record contains no evidence that appellant converted the CD before June 2013. Respondent argues that a voicemail that appellant left on her telephone on January 20, 2013, demonstrates that appellant converted the CD. Appellant stated in the voicemail that he was not going to give respondent one-third of the CD proceeds. Respondent did not present this evidence to the district court, however, until her memorandum in opposition to appellant's motion to vacate the default judgment. At the time of the default judgment, respondent had the burden of proving all of the elements of her case, including damages. *Hill*, 385 N.W.2d at 332. "Rule 60.02 does not provide for the introduction of evidence that was known to exist before judgment was entered." *Sullivan v. Spot Weld, Inc.*, 560 N.W.2d 712, 716 (Minn. App. 1997), *review denied* (Minn. Apr. 27, 1997). Because the voicemail was not part of the district court's record at the time the district court considered respondent's default judgment motion, respondent may not now rely on the voicemail in support of the district court's imposition of double liability for the value of the CD.

But, even if we considered the voicemail, we would conclude that the district court abused its discretion by not reducing the damages award by $64,822.55, the value of the CD, because the voicemail does not constitute evidence that appellant converted the CD before June 2013. It is undisputed that appellant was a joint owner with decedent on the CD, although the money in the CD was decedent's and decedent's intention was that the CD would be split equally between appellant and his two siblings. Although appellant expressed his intention in the voicemail not to turn over one-third of the CD proceeds to respondent, it is undisputed that appellant did not liquidate the CD until its maturation in

16

July 2014, over a year after respondent was appointed as personal representative. Therefore, appellant took no action before the appointment of the personal representative that constituted interference with the CD such that the estate was deprived of possession of the CD. If appellant had liquidated the CD and absconded with the proceeds before the appointment, such action would constitute conversion. But, because appellant in no way interfered with the CD before the appointment of the personal representative, the district court abused its discretion by failing to vacate its imposition of double liability for the conversion of the CD. Therefore, we reduce the default judgment by $64,822.55.

There is also insufficient evidence in the record to support the imposition of double liability for the remaining disputed assets of the estate, consisting of a second checking account, a mutual fund, a credit union account, funeral memorials, a loan to Ronald Kari, and a Ford Tempo. Because there is no evidence indicating that any of these assets were converted by appellant before respondent was appointed personal representative, we conclude that the district court erred by failing to vacate its imposition of double liability for the conversion of these assets. Therefore, we reduce the default judgment by an additional $10,182.89, the value of these assets, for a total deduction of $75,005.44.

In summary, the district court did not abuse its discretion by denying appellant's motion to vacate the default judgment on the grounds of misrepresentation or excusable neglect. Likewise, the district court did not abuse its discretion in concluding that the erroneous award of attorney fees did not constitute a basis for vacating the default judgment. Under these unique circumstances, however, where respondent presented no evidence indicating appellant's liability under section 525.392 for a number of the disputed

17

assets, we conclude that the district court abused its discretion by refusing to vacate the judgment in part under rule 60.02(f). While there was sufficient evidence in the record to support the imposition of damages for appellant's conversion of the assets, there was insufficient evidence to support the imposition of double liability pursuant to section 525.392 for some of the assets. Accordingly, we reduce the default judgment by $75,005.44 relative to those assets.

**Affirmed in part and reversed in part.**