*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0451**

S. Robideau Construction, Inc.,
Appellant,

vs.

John E. Hiber,
Respondent,

Wells Fargo Bank, N.A.,
Respondent.

**Filed August 29, 2016
Affirmed; motion denied
Schellhas, Judge**

Washington County District Court
File No. 82-CV-14-6214

Ryan J. Hatton, Peterson Habicht PA, Minneapolis, Minnesota (for appellant)

Ryan L. Kaess, Kaess Law, LLC, St. Paul, Minnesota (for respondent John Hiber)

Considered and decided by Schellhas, Presiding Judge; Reyes, Judge; and Kalitowski, Judge.*

_____

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**SCHELLHAS**, Judge

Appellant challenges the district court's order vacating a default judgment. We affirm.

**FACTS**

Respondent John Hiber owned real property that was subject to a mortgage in favor of respondent Wells Fargo Bank N.A. (Wells Fargo). The property sustained damage as a result of a fire on or about January 2, 2014. On or about January 5, Hiber and appellant S. Robideau Construction Inc. (SRC) executed a contract for SRC to perform restoration services on the property. Under the contract, Hiber assigned insurance proceeds from his insurer, American National Property and Casualty (American National), to SRC and agreed to pay interest on unpaid charges. SRC performed restoration services, and, upon completion of progress milestones, American National issued joint checks to SRC, Wells Fargo, and Hiber. Hiber and Wells Fargo endorsed all of those checks to SRC as payment for its restoration services. On or about July 28, American National issued a final joint check in the amount of $53,334.63. Hiber refused to endorse the check to SRC, despite SRC's demand.

In November 2014, SRC served on Hiber and filed with the county recorder a mechanic's lien statement claiming a lien in the amount of $56,175.88, the purported amount owed for the restoration services performed by SRC. In December, SRC sued Hiber

and Wells Fargo, seeking to foreclose its mechanic's lien and alleging claims of quantum meruit and breach of contract.[1] Hiber did not obtain legal counsel at that time.

On January 23, 2015, SRC served Hiber by U.S. mail with a notice of motion and motion for default and summary judgment; SRC later served Hiber with a memorandum of law, affidavits, and exhibits in support of its motion. On April 10, after a motion hearing at which Hiber failed to appear, the district court granted default and summary judgment to SRC in the amount of $68,841.77. On April 20, the court ordered entry of an amended judgment due to a clerical error in the April 10 judgment. The same day, the court administrator sent the parties notice of filing of the order and entry of the amended judgment.

On April 27, 2015, Hiber filed a letter with the district court, requesting that the case be reopened because he never received SRC's mechanic's lien statement or notice of the April 10 hearing and alleging that SRC failed to complete its work, performed unacceptable work, and caused "other expenses." On April 29, the court noted that affidavits of service were on file and denied Hiber's request.

On June 24, 2015, SRC moved for an order confirming sheriff's sale. On June 29, Hiber was personally served with notice of sheriff's sale. On August 11, Hiber filed another letter with the district court, again asking that the case be reopened and alleging that SRC

---

[1] SRC and Wells Fargo later executed a stipulation in which SRC acknowledged that Wells Fargo's mortgage on the property was prior and superior to SRC's mechanic's lien and Wells Fargo indicated that it would not make any formal appearance in the proceedings.

3

failed to complete its work, performed unacceptable work, and damaged his property. On August 18, the court denied Hiber's request.

Hiber retained counsel and, on August 21, 2015, responded to SRC's motion for an order confirming sheriff's sale. In his response, Hiber requested permission to move for reconsideration of the default judgment or to move to reopen the default judgment. On August 28, the sheriff sold Hiber's property to SRC for $50,000, which was the approximate difference between the value of the property and the outstanding amount owed on Wells Fargo's mortgage. The same day, the parties appeared for a hearing on SRC's motion for an order confirming sheriff's sale. Although the record contains no transcript of the August 28 proceedings, the district court apparently expressed its willingness to entertain additional filings and argument on the issues raised in Hiber's August 21 response, and it reset the hearing for September 28.

On September 11, 2015, Hiber filed a motion to reopen the default judgment "in the interest of justice," along with a supporting memorandum of law. On September 17, Hiber filed an affidavit in support of his motion to reopen the default judgment. On September 22, SRC filed a memorandum and affidavit in opposition to Hiber's motion to reopen. The district court heard arguments on the parties' motions on September 28 and later vacated the default judgment against Hiber.

This appeal follows.

## D E C I S I O N

*Collateral estoppel*

SRC first argues that the district court abused its discretion by vacating the default judgment against Hiber because the court had denied Hiber's two letter requests to reopen the case and therefore his September 11, 2015 motion to reopen the default judgment was barred by the doctrine of collateral estoppel. We disagree. "Whether collateral estoppel precludes litigation of an issue is a mixed question of law and fact that [appellate courts] review de novo." *Hauschildt v. Beckingham*, 686 N.W.2d 829, 837 (Minn. 2004).

Minnesota law provides:

> For collateral estoppel to apply, all of the following prongs must be met: (1) the issue must be identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or was in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

*Id.* (quotation omitted). "The issue on which collateral estoppel is to be applied must be the same as that adjudicated in the prior action and it must have been necessary and essential to the resulting judgment in that action." *Id.*

A default judgment may operate as a final judgment on the merits for collateral-estoppel purposes. *See Roberts v. Flanagan*, 410 N.W.2d 884, 886–87 (Minn. App. 1987) (rejecting appellant's argument that claims adjudicated by default judgment were not actually litigated and were not precluded from relitigation by collateral estoppel and stating that "a default judgment is not only res judicata to another action on the same claim but collateral estoppel as to those issues pleaded in the complaint" (citing *Herreid v. Deaver*,

5

193 Minn. 618, 622, 259 N.W. 189, 191 (1935))). But application of collateral estoppel requires that an issue be determined in a prior adjudication, implying that, to be collaterally estopped, the issue must be presented in a subsequent action. *See Hauschildt*, 686 N.W.2d at 837 (stating that "[f]undamental to [the] doctrines [of res judicata and collateral estoppel] is that a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction cannot be disputed *in a subsequent suit* between the same parties or their privies" (emphasis added) (quotations omitted)).

Here, Hiber submitted his letter requests to reopen the case and his motion to reopen the default judgment in the same proceeding. We therefore conclude that collateral estoppel did not bar Hiber's motion to reopen the default judgment.

***Reconsideration of refusal to reopen***

SRC further argues that Hiber's request to move for reconsideration of the default judgment was procedurally improper and that the district court therefore erred by reconsidering its denials of Hiber's letter requests to reopen the case. "We review a district court's decision to allow a motion for reconsideration for an abuse of discretion." *Goerke Family P'ship v. Lac qui Parle-Yellow Bank Watershed Dist.*, 857 N.W.2d 50, 52–53 (Minn. App. 2014) (citing *In re Welfare of S.M.E.*, 725 N.W.2d 740, 743 (Minn. 2007)).

Under the Minnesota General Rules of Practice:

> Motions to reconsider are prohibited except by express permission of the court, which will be granted only upon a showing of compelling circumstances. Requests to make such a motion, and any responses to such requests, shall be made only by letter to the court of no more than two pages in length, a copy of which must be served on all opposing counsel and self-represented litigants.

6

Minn. Gen. R. Pract. 115.11. "Motions for reconsideration are not opportunities to present facts that were available when the prior motion was considered and will not be allowed to supplement the record on appeal." *Am. Bank of St. Paul v. Coating Specialties, Inc.*, 787 N.W.2d 202, 206 (Minn. App. 2010) (citing Minn. Gen. R. Pract. 115.11 1997 advisory comm. cmt.), *review denied* (Minn. Oct. 27, 2010). A moving party must file any affidavits and exhibits in support of a nondispositive motion "at least 14 days prior to the hearing" on the motion. Minn. Gen. R. Pract. 115.04(a).

SRC is correct that Hiber did not request to move for reconsideration by letter as required by Minn. Gen. R. Pract. 115.11, instead seeking permission to move for reconsideration in his response to SRC's motion for an order confirming sheriff's sale. Yet the district court implicitly entertained Hiber's request to move for reconsideration as though it were a motion for reconsideration. And Hiber filed his affidavit in support of his motion to reopen the default judgment on September 17, 2015, only 11 days before the September 28 hearing.

But SRC has presented no authority indicating that a district court abuses its discretion by granting a motion to reconsider if the motion is procedurally defective, and we have found no such authority. Instead, we have found cases suggesting that a district court has the discretionary power to entertain a motion notwithstanding its procedural defects. *See, e.g.*, *Lee v. Lee*, 749 N.W.2d 51, 62 (Minn. App. 2008) ("It is within the district court's discretion to rule on a motion despite [movant]'s late filings."), *aff'd in part and rev'd in part on other grounds*, 775 N.W.2d 631 (Minn. 2009); *Benassi v. Back & Neck Pain Clinic, Inc.*, 629 N.W.2d 475, 483 (Minn. App. 2001) (noting movant's "casual

and flagrant disregard" of filing and service requirements of Minn. Gen. R. Pract. 115.03 but stating that "it is within the district court's discretion to rule on the motion despite [movant]'s late filings and, based on the discretion afforded the district court, we will not reverse here because of noncompliance with the rules even though another result is defensible"), *review denied* (Minn. Sept. 11, 2001). "Further, '[i]t is well settled in this state that where, in a particular case, the interests of justice would be best served by relieving a party from formal compliance with a rule, the trial court, in its discretion, may suspend or relax its operation.'" *Lee*, 749 N.W.2d at 62 (quoting *Swenson v. Swenson*, 257 Minn. 431, 434, 101 N.W.2d 914, 917 (1960)). We conclude that the district court did not abuse its discretion by reconsidering its denials of Hiber's letter requests to reopen the case.

***Correction of judicial error***

SRC also appears to argue that the district court abused its discretion by vacating the default judgment because correction of judicial error is not a permissible basis for relief under Minn. R. Civ. P. 60.02. SRC is correct that rule 60.02(f) may not be used to correct judicial error. *See Carter v. Anderson*, 554 N.W.2d 110, 113 (Minn. App. 1996) (concluding that "Rule 60.02 is limited to the specific situations provided for in the rule itself and does not allow for general correction of judicial error"), *review denied* (Minn. Dec. 23, 1996). But we are not persuaded that the district court granted Hiber's motion to reopen the default judgment as a means of correcting judicial error.

Acting pro se, Hiber submitted to the district court two letter requests to reopen the case. The court summarily denied both requests. After retaining counsel, Hiber moved to reopen the default judgment "in the interest of justice," not to correct judicial error.

8

Although Hiber's counsel requested at the September 28, 2015 hearing that the court "correct a mistake of law" in its earlier denials of Hiber's letter requests to reopen the case, the court determined that Hiber had satisfied the *Finden* factors and did not purport to correct any judicial error by granting Hiber's motion to reopen the default judgment. Because the district court did not vacate the default judgment as a means of correcting judicial error, we conclude that the court did not abuse its discretion on that ground.

***Vacation of default judgment***

SRC argues that the district court abused its discretion by vacating the default judgment because Hiber did not satisfy the requirements of rule 60.02. On a party's motion, a district court may relieve the party from a final judgment for a number of reasons, including "[m]istake, inadvertence, surprise, or excusable neglect." Minn. R. Civ. P. 60.02. "Rule 60.02 specifically provides that a trial court has discretionary power to grant relief, not only from the order but also from a final judgment." *Charson v. Temple Israel*, 419 N.W. 2d 488, 490 (Minn. 1988). "[Appellate] court[s] will not overturn a ruling on a motion to vacate a default judgment unless the district court abused its discretion." *Roehrdanz v. Brill*, 682 N.W.2d 626, 631 (Minn. 2004). A district court abuses its discretion if it "'act[s] under a misapprehension of the law'" or if its decision is "based on facts not supported by the record." *Northland Temporaries, Inc. v. Turpin*, 744 N.W.2d 398, 402–03 (Minn. App. 2008) (quoting *Sommers v. Thomas*, 251 Minn. 461, 469, 88 N.W.2d 191, 196–97 (1958)), *review denied* (Minn. Apr. 29, 2008). "[Appellate courts] give deference to the factual findings of the district court unless they are clearly erroneous." *Roehrdanz*, 682 N.W.2d at 631.

When considering a motion to reopen or vacate a default judgment under Minn. R. Civ. P. 60.02, Minnesota courts apply the four-factor test that the supreme court set forth in *Hinz v. Northland Milk & Ice Cream Co.*, 237 Minn. 28, 30, 53 N.W.2d 454, 455–56 (1952), and reaffirmed in *Finden v. Klaas*, 268 Minn. 268, 271, 128 N.W.2d 748, 750 (1964). The *Finden* factors "require consideration of whether the movant has (1) a reasonable defense on the merits; (2) a reasonable excuse for the failure or neglect to answer; (3) acted diligently after notice of entry of the judgment; and (4) demonstrated that no prejudice will occur to the judgment creditor." *Turpin*, 744 N.W.2d at 402. A party seeking relief under rule 60.02 "bears the burden of proving all four of the [*Finden* factors], including lack of prejudice," but "[a] strong showing on the other factors may offset relative weakness on one factor." *Imperial Premium Finance, Inc. v. GK Cab Co.*, 603 N.W.2d 853, 857 (Minn. App. 2000).

*Reasonable defense on the merits*

SRC appears to argue that, because the judgment against Hiber followed SRC's motion for default and summary judgment, which was supported with affidavits and exhibits, Hiber was required to satisfy a higher burden of proof to demonstrate a reasonable defense on the merits and obtain relief under rule 60.02. But rule 60.02 and the *Finden* factors apply to motions for relief from final judgments in general, without distinguishing between summary judgments and default judgments. *See* Minn. R. Civ. P. 60.02 (providing that "the court may relieve a party . . . from a final judgment"); *Conley v. Downing*, 321 N.W.2d 36, 38, 40–41 (Minn. 1982) (applying *Finden* factors on review of district court's denial of motion to vacate summary judgment and stating that "[a]lthough this case

10

concerns the failure properly to defend a summary judgment motion rather than a default judgment, the same test should apply in either instance"); *Carter*, 554 N.W.2d at 112, 115 (applying *Finden* factors on review of district court's vacation of summary judgment). We therefore reject any argument that the form of SRC's motion increased Hiber's burden to demonstrate a reasonable defense on the merits.

"A reasonable defense on the merits is one that, if established, provides a defense to the plaintiff's claim. Specific information that clearly demonstrates the existence of a debatably meritorious defense satisfies this factor." *Turpin*, 744 N.W.2d at 403 (citation omitted). "The existence of a meritorious defense may be established in an affidavit or by other proof." *In re Estate of McCue*, 449 N.W.2d 509, 512 (Minn. App. 1990) (quotation omitted); *see also Charson*, 419 N.W. 2d at 491 (stating that "the existence of a meritorious claim must ordinarily be demonstrated by more than conclusory allegations in moving papers").

In his April 27, 2015 letter request to reopen the case, Hiber stated:

> [SRC] never completed [its] work and has owed me $2893.35 since 3/18/14 for the Microwave, Dishwasher, Cook top, and Oven and has refused to pay me. [It] also owe[s] me for work that was never completed and work [it] never started, work that is not acceptable, and other expenses [it] ha[s] caused.

In his August 11 letter request to reopen the case, Hiber detailed a number of ways in which SRC purportedly had failed to complete work and damaged his property. And in his affidavit supporting his motion to reopen the default judgment, Hiber averred: "Most of the projects . . . were not completed on my home. These items are still being charged to me

despite being incomplete. The amount demanded includes amount[s] for work that was not completed and for items that [I] already paid for."

SRC argues that Hiber "had no legal right to refuse to endorse the insurance proceeds to [SRC]" because Hiber had assigned the insurance proceeds to SRC and because American National issued the insurance proceeds after determining that SRC had completed the restoration services for Hiber's property. SRC is correct that, under the contract between Hiber and SRC, SRC agreed to perform restoration services on Hiber's property and Hiber "agree[d] to pay [SRC] for such services" and "assign[ed] to [SRC] the insurance proceeds payable for such services."

But if proved, Hiber's allegations that SRC failed to complete the contracted-for restoration services and damaged Hiber's property would provide a defense to SRC's claims on the basis that SRC breached the contract. *Cf. N. Coast Lumber Co. v. Great N. Lumber Co.*, 144 Minn. 304, 308, 175 N.W. 547, 548 (1919) (characterizing as "a question for the jury" whether defendants were justified in withholding contract payment based on plaintiff's alleged prior breach of contract). The district court relied on Hiber's allegations and found that a reasonable defense on the merits "may well exist and weighs in favor of Mr. Hiber." We conclude that the district court did not clearly err in finding that Hiber demonstrated a reasonable defense on the merits.

*Reasonable excuse for failure to answer*

In its order vacating the default judgment, the district court found that Hiber did not make a strong showing of a reasonable excuse for his failure to answer. Hiber argues that he was an unrepresented, unsophisticated party and asserts that he was informed by "Court

12

Administration" that he would receive "everything" in the mail but did not receive any "documentation" from this case between December 23, 2014, and April 20, 2015.

Pro se litigants are generally held to the same standard as attorneys and are required to comply with court rules. *See Black v. Rimmer*, 700 N.W.2d 521, 525, 527 (Minn. App. 2005) (stating on review of denial of motion to vacate default judgments that, "[a]lthough some accommodations may be made for pro se litigants, this court has repeatedly emphasized that pro se litigants are generally held to the same standard as attorneys and must comply with court rules" (quotation omitted)), *review dismissed* (Minn. Sept. 28, 2005).

Hiber cites a number of cases to support his argument that he had a reasonable excuse for his failure to answer based on his lack of representation and sophistication. But as noted by SRC, each of the cases cited by Hiber predates 1940; in two of the cases, the movant did not understand English; and in a third case, the movant was incapacitated due to illness. *See Roe v. Widme*, 191 Minn. 251, 252–54, 254 N.W. 274, 275–76 (1934) (affirming order granting motion to vacate default judgment where movant was served with summons and complaint but understood and spoke English "very imperfectly," had no business experience, and did not realize that action had been brought against her or that it was necessary to answer complaint); *Deaver v. Nelson*, 180 Minn. 36, 37–38, 230 N.W. 122, 122–23 (1930) (concluding that district court abused its discretion by denying motion to vacate default judgment where movant was 71 years old and was a "very sick man" who had suffered paralytic stroke and was confined to hospital, and movant's "mental condition was such that he could not give his business affairs such consideration and attention as a

normally prudent man would have given them in a normal state of mind" (quotation omitted)); *Flanery v. Kusha*, 147 Minn. 156, 157, 160–61, 179 N.W. 902, 902–04 (1920) (affirming order granting motion to vacate default judgment where movant was served with summons but did not understand or read English and relied on friend's statements that "no time was fixed for answering the complaint" and that "[movant] would not need to answer").

Here, the summons and complaint were served upon Hiber personally on December 29, 2014. Hiber "remember[ed] someone coming to [his] house around the end of December 2014" who "served [him] some papers," which his attorney later informed him were most likely the summons and complaint. Among other things, the summons cautioned him in bold, capitalized letters that he was "being sued" and that he "must reply within 20 days to protect [his] rights." And SRC served Hiber by U.S. mail with its notice of motion, motion for default and summary judgment, and supporting memorandum of law and affidavits. Additionally, Hiber admitted in his affidavit that he received a notice of case filing and assignment on or about December 23, 2014.

Hiber's circumstances are unlike the movants' in the cases he cites for support. We conclude that the district court did not clearly err in finding that Hiber failed to make a strong showing of a reasonable excuse for his failure to answer. *Cf. Black*, 700 N.W.2d at 527–28 (concluding that pro se defendant failed to demonstrate reasonable excuse for failure to answer complaint where summons explained that he was "required to serve upon plaintiff's attorney an answer to the complaint within 20 days after service of this summons

14

upon [him]" and district court issued order that failure to file timely informational statements "may result in sanctions" (quotations omitted)).

*Diligence after notice of entry of judgment*

A motion for relief under rule 60.02 for excusable neglect must be made "within a reasonable time" and "not more than one year after the judgment . . . was entered." Minn. R. Civ. P. 60.02. The supreme court has stated that "what constitutes a reasonable time varies from case to case and must be determined in each instance from the facts before the court." *Bode v. Minn. Dep't of Nat. Res.*, 612 N.W.2d 862, 870 (Minn. 2000) (quotation omitted). A moving party may act diligently by seeking relief within three months of entry of judgment. *See Imperial Premium Finance*, 603 N.W.2d at 858 (stating that "[o]nly about three months elapsed between entry of the default judgment and [movant]'s motion to vacate," noting that "this court has held that acting within three months is due diligence," and concluding that district court did not abuse its discretion in finding that third *Finden* factor was satisfied (citing *Kemmerer v. State Farm Ins. Cos.*, 513 N.W.2d 838, 841 (Minn. App. 1994)).

SRC acknowledges on appeal that Hiber made a "strong showing . . . that he acted with due diligence." On April 20, 2015, the district court ordered entry of an amended judgment against Hiber, and the court administrator sent the parties notice of entry of the amended judgment the same day. Hiber filed his first letter requesting that the case be reopened on April 27. Hiber filed his second letter requesting that the case be reopened on August 11. And after retaining counsel, Hiber moved to reopen the default judgment on

15

September 11. We conclude that the district court did not clearly err in finding that Hiber acted with due diligence to reopen the default judgment.

*Prejudice*

The district court found that SRC would not suffer prejudice if the court vacated the default judgment because delay does not constitute substantial prejudice and because Hiber's counsel indicated at the August 28, 2015 hearing that he was in the process of placing the majority of the disputed funds with the court. "In general, when the only prejudicial effect of vacating a judgment is additional expense and delay, substantial prejudice of the kind necessary to keep a judgment from being reopened does not exist." *Black*, 700 N.W.2d at 528 (quotation omitted); *see also Riemer v. Zahn*, 420 N.W.2d 659, 662 (Minn. App. 1988) (stating that "[t]he only clear result [of vacating particular default judgment] is the delay and added expense, factors which do not equate substantial prejudice standing alone" (citing *Finden*, 268 Minn. at 272, 128 N.W.2d at 751)). Compromised evidence may constitute prejudice such that vacating a default judgment is inappropriate. *See Riemer*, 420 N.W.2d at 662 (stating that "vacating the default judgment should not significantly prejudice [nonmovants]" because "[t]he record does not indicate that the evidence has been substantially affected or that witnesses now are unavailable"). "The moving party bears the burden of proving all four of the [*Finden* factors], including lack of prejudice." *Imperial Premium Finance*, 603 N.W.2d at 857 (citing *Nelson v. Siebert*, 428 N.W.2d 394, 395 (Minn. 1988)).

SRC argues on appeal that, because Wells Fargo's mortgage on Hiber's property is superior to SRC's mechanic's lien and because Hiber has failed to remain current on his

16

mortgage payments, "the passage of time unfairly exposes SRC to the risk of having its lien extinguished by foreclosure of the superior lien interest." SRC further contends that Hiber's alleged defenses concern the physical condition of his property, which is in his sole possession, and that the "integrity" of evidence of the condition of Hiber's property has been "severely compromised" because any inspection of the property necessarily would take place two years after the work was completed. But SRC did not present these theories of prejudice to the district court, and we will not consider them for the first time on appeal. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (stating that "[a] reviewing court must generally consider only those issues that the record shows were presented and considered by the trial court in deciding the matter before it" and that "[n]or may a party obtain review by raising the same general issue litigated below but under a different theory" (quotation omitted)).

The only other prejudice claimed by SRC is the additional expense and delay associated with continued litigation and the sheriff's sale that it conducted, which do not constitute substantial prejudice. And in both his response to SRC's motion for an order confirming sheriff's sale and at the September 28 hearing, Hiber sought permission to place the disputed funds with the district court pending resolution of the proceedings in this case.[2] Although Hiber admits that he has not yet deposited the funds with the court, the court may order him to do so. We conclude that the district court did not clearly err in finding that

---

[2] On appeal, Hiber included in his addendum other materials related to the placement of the funds with the district court. SRC seeks to have the materials stricken as matters outside the record on appeal. Because we do not rely on the disputed materials, we deny SRC's motion to strike as moot.

17

Hiber demonstrated a lack of prejudice to SRC resulting from vacation of the default judgment. Because Hiber satisfied at least three of the *Finden* factors, we conclude that the district court did not abuse its discretion by vacating the default judgment.

**Affirmed; motion denied.**